**HODGES and Carter,
Plaintiffs-Appellants,**

v.

**METTS, Kesselring and Boone,
Defendants-Appellees.**

**HODGES, Carter and Poll,
Plaintiffs-Appellants,**

v.

**LANDRIEU and Porterfield,
Defendants-Appellees.**

Nos. 81–5112, 81–5539.

United States Court of Appeals,
Sixth Circuit.

Argued March 4, 1982.
Decided April 30, 1982.

**1134**

Walker Bledsoe Smith, Robert Frederick Smith, Legal Aid Society, Inc., Louisville, Ky., for plaintiffs-appellants.

Alexander Taft, Jr., U. S. Atty., Marvin R. Sotsky, Mikell Grafton McMurry, Louisville, Ky., for defendants-appellees.

Before BROWN and KENNEDY, Circuit Judges, and CHURCHILL,* District Judge.

CORNELIA G. KENNEDY, Circuit Judge.

Plaintiff-appellant, Hodges, a tenant in the Americana Apartments, a 624 unit building in Louisville, ·Kentucky, commenced this suit for declaratory and injunctive relief against defendant Landrieu,** then Secretary of Housing and Urban Development, and defendants, Metts, Kesselring and Boone, owner and managers of Americana, seeking procedural safeguards prior to her summary eviction from Americana.[1] Hodges asserts that the activities of the owner and managers of the complex constitute governmental action triggering the procedural requirements of the fifth amendment due process clause because although Americana is financed by a private mortgage, that mortgage is insured by the federal government under § 221(d)(4) of the National Housing Act, 12 U.S.C.A. § 1715*l*(d)(4). The District Court granted defendants' motion for summary judgment. It concluded that as to Hodges, the government had not insinuated itself into a position of interdependence with private landlords. The court therefore denied Hodges' attempt to impose further procedural guarantees before her tenancy was terminated. For the reasons stated herein, we affirm this decision of the District Court.

---

\* Honorable James P. Churchill, United States District Court for the Eastern District of Michigan, sitting by designation.

\*\* Samuel R. Pierce, Jr., succeeded Landrieu as Secretary of Housing and Urban Development, on, January 23, 1981.

1. This appeal was filed on behalf of two additional plaintiffs, Carter and Poll. At oral argument we were informed that Carter and Poll no longer reside in the complex. Their counsel agreed that their change in circumstances renders their appeal moot and stated that the appeal was no longer pursued on their behalf.

Hodges became a tenant in the Americana Apartments in 1970, where she continues to live with her four children. Her original lease expired and she has lived in the complex on a month-to-month basis ever since. In October 1979, Hodges was given a thirty-day notice that her tenancy would not be renewed. The proffered reason was that five people were too many occupants for the 650 square feet of living space comprising her apartment. Due to this appeal, the defendants have not yet commenced eviction proceedings in the state courts.

The Department of Housing and Urban Development ("HUD") has been authorized by Congress to institute a number of programs to aid private industry in the development of low- and moderate-income housing for displaced urban dwellers. The particular program at issue in the instant case, commonly referred to as a "§ 221(d)(4) program," provides for mortgage insurance guarantees issued by the federal government.

> The Secretary is authorized, upon application by the mortgagee, to insure under this section as hereinafter provided any mortgage . . . which is eligible for insurance as provided herein and, upon such terms and conditions as the Secretary may prescribe, to make commitments for the insurance of such mortgages prior to the date of their execution or disbursement thereon.

12 U.S.C.A. § 1751$l$(b). The statute further goes on to prescribe the maximum limits of the insurance depending on the size of the property and details other financial requirements not relevant here. The property itself, of course, is security for the mortgage guarantee. In the event of default on the mortgage, the government pays the mortgage balance and takes title to the premises. The insurance for the mortgage is paid for by mortgage insurance premiums. 24 C.F.R. § 221.755 (1981). In addition to these statutory safeguards, the regulations issued by the Secretary impose further conditions on the owner of the property before that owner can qualify for mortgage insurance.

Hodges contends that her threatened summary eviction violates the due process clause of the fifth amendment notwithstanding Kentucky's own laws which impose certain procedural requirements on evicting landlords.[2] *See* Ky.Rev.Stat. § 383.200 *et seq.* As Hodges herself recognizes, before the due process clause is triggered by private activity, she must demonstrate that sufficient governmental action is involved in order to render the private activity subject to due process restrictions.[3] *See, e.g., Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972).

In order to assess the governmental involvement in the Americana complex it is necessary to review the regulatory controls that HUD imposes before it issues mortgage guarantees. Appellant asserts that the involvement of HUD is so pervasive that a finding of state action is mandated; the defendants, on the other hand, argue that a system of mortgage insurance such as we have here is an insufficient predicate for a finding of governmental action.

HUD has issued extensive regulations concerning § 221(d)(4) mortgages. 24 C.F.R. § 221 *et seq.* (1981). The vast majority of these regulations deal with various financial arrangements incident to qualifying for mortgage insurance, including eligibility limitations, mortgage payment speci-

---

**2.** In essence, as conceded at oral argument, Hodges asks us to read into Kentucky's statute a requirement that tenants be notified as to the cause of their termination. Furthermore, Hodges asks that we find a constitutional right to be evicted only for good cause. These are alleged to be the only two differences between fifth amendment due process safeguards and those already provided by Kentucky's forcible entry and detainer statute.

**3.** Even if we were to find sufficient governmental action to warrant imposition of fifth amendment protections, appellant Hodges would have to demonstrate that she had a protectible property interest in her tenancy cognizable by the fifth amendment and that the process actually given by Kentucky law is insufficient to satisfy due process standards.

fications, interest rate ceilings and adjustments, and other fees and charges. It is not claimed, nor could it be, that these financial arrangements constitute sufficient governmental involvement to warrant imposition of fifth amendment safeguards. However, Hodges claims that other regulations serve to compromise the seemingly private nature of the Americana complex. These regulations provide that the mortgagor will not refuse to sell or rent on the basis of race, color, religion, or national origin, 24 C.F.R. § 221.527 (1981), that the Secretary of HUD may regulate the mortgagor as long as HUD is the issuer of the premises, 24 C.F.R. § 221.529 (1981), and that the mortgagor maintain the project in good repair with provisions permitting inspection of the premises and/or books and records, 24 C.F.R. § 221.530 (1981). With regard to certain mortgagors, maximum rates of return are specified, 24 C.F.R. § 221.532 (1981), and lease agreements are required to be approved by HUD, 24 C.F.R. § 221.533 (1981). For all types of mortgagors, tenancy cannot be determined on the basis of the presence or absence of children, the property cannot be utilized for hotel purposes, and tenancy preference must be given to those displaced from an urban renewal area or displaced as a result of a disaster, 24 C.F.R. §§ 221.536, .537. Most of the foregoing provisions are clearly intended to provide additional security for the government's mortgage commitment, not to insinuate the government in the daily operations of the project. Others, such as the prohibitions against discrimination, are required of all landlords.

Hodges argues that this regulatory involvement is so extensive that this Court must find that the government had entered into a symbiotic relationship with Metts, Kesselring and Boone. *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). Hodges wishes to characterize the mortgage insurance program as constituting a "joint venture" between the government and the landlords. In *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), however, the Court made clear that the mere fact that a business is subject to state regulation does not by itself convert its action into that of the state. *Id.* at 350, 95 S.Ct. at 453. The Court declared that the inquiry must be directed to "whether there is a sufficiently close nexus between the State and the challenged action ... so that the action ... may be fairly treated as that of the State itself." *Id.* at 351, 95 S.Ct. at 453. *See also Newsom v. Vanderbilt University*, 653 F.2d 1100 (6th Cir. 1981) (intimating that no state action by hospital's receipt of Hill-Burton funds notwithstanding extensive regulation); *Northrip v. Federal Nat. Mtg. Ass'n*, 527 F.2d 23 (6th Cir. 1975) (no state action where statutes regulated mortgage foreclosures and sheriff participated in the procedure).

We do not find HUD's involvement in § 221(d)(4) programs to be so pervasive as to warrant a finding that the challenged activity is in essence that of the government. The government is not involved in overseeing the day-to-day affairs of the apartment complex. Rather, the government is only the guarantor of the mortgage. The complex is expected to carry its own weight, that is, the cash flow from rental payments is expected to pay the mortgage, make repairs and earn a return on the landlord's investment. Rental rates are not subsidized in any meaningful way.[4]

Furthermore, it is clear that there is no "nexus" between the challenged action, *i.e.*, eviction without cause, and the limited governmental involvement. The regulations cited by Hodges as demonstrating governmental action have little or nothing to do with tenant eviction. While the government is authorized to review and approve leases, 24 C.F.R. § 221.533 (1981), Hodges

---

4. We need not decide whether the landlord's receipt of Section 8 housing assistance payments, authorized by 42 U.S.C.A. § 1437f and 24 C.F.R. § 880 *et seq.* (1981), would alter the determination that no governmental action is present in § 221(d)(4) programs. Appellant Hodges does not now, nor has she ever received such rental assistance from the government and Americana does not currently receive such aid.

was a month-to-month tenant and thus her eviction was not influenced by this potential government oversight. While HUD does provide detailed eviction procedures for what it characterizes as "subsidized" projects, HUD specifically disclaimed an intention to include § 221(d)(4) projects within the scope of these regulations. *See* 24 C.F.R. § 450.2(e) (1981). Simply, § 221(d)(4) guarantees are not considered subsidies. This surely indicates the government's intent to avoid linking itself to evictions in § 221(d)(4) projects. The attempted showing of nexus by Hodges is no more successful than the plaintiff in *Jackson v. Metropolitan Edison, supra,* and for this reason, too, Hodges' appeal must fail.

Hodges also argues that government action can be found here since private entities are carrying out a traditional government function. However, in *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978), in holding that the state's provision of a warehouseman's lien sale law was not state action, the Court limited the 'public function' branch of state action to activities " 'exclusively reserved to the state.' " *Id.* at 158, 98 S.Ct. at 1734. One cannot seriously contend that the provision of low- and moderate-income housing is *exclusively* a public enterprise. In fact, the statute itself, 12 U.S.C.A. § 1715*l*(a) in its preface notes that the purpose of the law was to aid private industry in better meeting the needs of the displaced and underhoused. Thus, we cannot agree with appellant's contention that government action exists here by such reasoning.

Plaintiff seeks to rely on cases finding state action under different housing statutes. *See, e.g., Joy v. Daniels,* 479 F.2d 1236 (4th Cir. 1973); *McQueen v. Druker,* 438 F.2d 781 (1st Cir. 1971); *Anderson v. Denny,* 365 F.Supp. 1254 (W.D.Va.1973); *McClellan v. University Heights, Inc.,* 338 F.Supp. 374 (D.R.I.1972). *See also Lopez v. Henry Phipps Plaza South, Inc.,* 498 F.2d 937 (2d Cir. 1974). *But see McGuane v. Chenango Court, Inc.,* 431 F.2d 1189 (2d Cir. 1970), *cert. denied,* 401 U.S. 994, 91 S.Ct. 1238, 28 L.Ed.2d 532 (1971); *Weigand v. Afton View Apartments,* 473 F.2d 545 (8th Cir. 1973). This reliance is misplaced. At the outset, all of these cases involved either § 221(d)(3) or § 236 programs, not § 221(d)(4) programs as here. And while appellant Hodges argues that the differences between these programs are minimal, the fact remains that HUD does not treat § 221(d)(4) as a "subsidy" program whereas the others are so characterized.

The cases noted above can be grouped in three categories, each of which is distinguishable from the governmental involvement in § 221(d)(4) programs. In the *McQueen, McClellan* and *Lopez* cases, *supra,* the courts were confronted with challenges to summary evictions from housing federally financed by § 221(d)(3) assistance, 12 U.S.C.A. § 1715*l*(d)(3). Since suit was brought under the Civil Rights Act, the plaintiffs in those cases alleged that *state* involvement infected the landlords' actions with the color of state law. The courts found sufficient state action since the land built upon was purchased from a state agency after being condemned by the state, the mortgage guarantee limited interest payments to three percent, and a six percent rate of return was assured. *See, e.g., McQueen, supra,* at 783, *Lopez, supra,* at 939. Moreover, the landlords' freedom of action was circumscribed to a great extent by the mortgage insurance contract. Limitations were imposed on leases as to amount, duration, and rental increases, admission policies were regulated, and some tenants were selected by the state agency itself. *Id.* Management practices were carefully supervised. The difference between these cases and the case *sub judice* was described by the *McQueen* court itself, *supra,* at 784–85.

Mere receipt of financial subsidy and subjection to some regulation are the conditions of much of our societal life. Neither factor—or both together—is dispositive of "state action". But, while we disavow any effort to be definitive, we conclude that at least when a specific governmental function is carried out by heavily subsidized private firms or individuals whose freedom of decision-mak-

ing has, by contract and the reserved governmental power of continuing oversight, been circumscribed substantially more than that generally accorded an independent contractor, the coloration of state action fairly attaches. (footnote omitted).

In *Joy v. Daniels*, 479 F.2d 1236 (4th Cir. 1973), the court found state action present in a § 221(d)(3) program. The crucial factor in the court's analysis is conspicuously missing here. The defendant-landlord in *Joy* was a recipient of rent supplements from the government; the government subsidized the plaintiff's tenancy. The court indicated that no state action would have been found had the governmental involvement been limited to provision of mortgage benefits and state eviction procedures. *Id.* at 1238–39.

Finally, *Anderson v. Denny*, 365 F.Supp. 1254 (W.D.Va.1973), found state action where the landlord received benefits pursuant to a § 236 housing program which entails even greater regulation and subsidization than § 221(d)(3) programs. The amount of rent to be charged is limited, admission to the project is limited, mortgage interest rates are limited to one percent per annum, rent supplements are given for 20% of the tenants, and the tax benefits to the landlord are substantial. *Id.* at 1256–57. Hence the analogy between § 236 and § 221(d)(4) that appellant wishes us to make is unsupported by the facts.

We find a better analogy to be found in *McGuane v. Chenango Court, Inc.*, 431 F.2d 1189 (2d Cir. 1970). There the Court held that the mere provision of mortgage insurance under § 221(d)(3), without more, was an insufficient predicate for a finding of state action. "Receipt of federal benefits in the form of mortgage insurance under the National Housing Act does not make the defendant an agency of the State of New York so as to require it to accord the procedural due process which the Fourteenth Amendment demands of a state." *Id.* at 1190. While there is arguably even less governmental involvement here than in *McGuane*, surely the instant case is far clos-

er to the *McGuane* end than to the *McQueen* end of the "governmental-action" spectrum.

In conclusion, therefore, we find that HUD's decision to exclude § 221(d)(4) programs from those required to provide extensive due process safeguards prior to summary eviction to be supportable. The distinction which HUD draws between "subsidized" and "non-subsidized" projects is neither arbitrary nor unreasonable. Hodges has no constitutional right to force HUD to modify its regulations to include § 221(d)(4) programs within the category of "subsidized" projects; she asks us to do by judicial decision what HUD has specifically refused to do by regulation. This we decline to do. Furthermore, Hodges has not persuaded us that the governmental involvement in § 221(d)(4) programs is so extensive that the actions of the landlord can be imputed to the government. And even if we were to so consider the actions of defendants, Hodges has failed to delineate the 'nexus' between the challenged activity, her eviction, and the limited governmental involvement here. Accordingly, the judgment of the District Court is affirmed.