Bennett L. CROWDER, II,
Plaintiff-Appellant,

v.

J.K. CONLAN, et al.,
Defendants-Appellees.

No. 83–5427.

United States Court of Appeals,
Sixth Circuit.

Argued June 6, 1984.

Decided Aug. 2, 1984.

Daniel B. Boone, Jack M. Lowery, Boone & Lowery, Louisville, Ky., Edward L. Hardin, Jr. (argued), Hardin & Hollis, Birmingham, Ala., for plaintiff-appellant.

William O. Guethlein, Boehl, Stopher, Graves & Deindoerfer, William P. Swain, Louisville, Ky., Lee T. White, White & White, Hopkinsville, Ky., Ben S. Fletcher, III (argued), Hopkinsville, Ky., Galen J. White, Jr. (argued), Boehl, Stopher, Graves & Deindoerfer, Louisville, Ky., for defendants-appellees.

Before MARTIN, Circuit Judge, CELEBREZZE, Senior Circuit Judge, and McRAE, Chief Judge.*

BOYCE F. MARTIN, Jr., Circuit Judge.

Dr. Bennett L. Crowder, II, appeals the district court's grant of summary judgment for the defendants in this 42 U.S.C. § 1983 action. Dr. Crowder initiated this suit on December 19, 1980, charging that the Jen-

---

* Honorable Robert M. McRae, Jr., Chief United States District Judge for the Western District of Tennessee, sitting by designation.

nie Stuart Memorial Hospital in Hopkinsville, Kentucky, its staff and other defendants had violated his civil rights by restricting his staff privileges at the hospital.

In October, 1979, Dr. Crowder made a formal application for emergency room privileges at the hospital. At the time, Dr. Crowder already held surgical privileges. On December 15, 1979, a petition, signed by twenty-four physicians of the hospital's staff, was filed with the hospital's Executive Committee, Hospital Administrator, and Board of Trustees, opposing Dr. Crowder's application for emergency room privileges as well as his continuation on the hospital's surgical staff. From January through June, 1980, an investigation was conducted concerning Dr. Crowder's medical practices.[1] As a result of this investigation, a report was issued to the hospital's Executive Committee on June 14, 1980. The report recommended that Dr. Crowder not be granted emergency room privileges and also recommended restrictions on his surgical practices. This report was adopted by the Executive Committee in November 1980. In December, Dr. Crowder commenced this lawsuit.

After the Executive Committee's actions, Dr. Crowder was given formal notice of the charges against him and told he could request a hearing. After several postponements, a full hearing was held on July 6 and 7, and on August 24 and 25, 1981. By a four-to-one vote, the hearing committee recommended that various restrictions be placed on Dr. Crowder's surgical privileges. Dr. Crowder then requested an appeal to the hospital's Board of Trustees. After the presentation of oral arguments and submission of written statements, on March 4, 1982, an appellate review committee affirmed the recommendations of the hearing committee. This decision was eventually adopted by the hospital's Board of Trustees, and was implemented effective April 1, 1982.

In the district court, Dr. Crowder alleged several federal and state claims. At the conclusion of the hospital's administrative review process, the district court, in its initial opinion, granted the defendants' summary judgment motion "because [Dr. Crowder had] neither pleaded any constitutionally-protected liberty or property interest which was denied him, nor [had] he established as a material issue that he has been deprived of any arguably protected interests without adequate procedural safeguards." Dr. Crowder then filed a recusal motion and a motion to reconsider. The district court denied the first motion on its merits. The court also found that this motion was untimely filed. Regarding the motion to reconsider, the court issued a second opinion which held that Dr. Crowder had not been deprived of due process of law by the defendants' decision to restrict his hospital privileges.

On appeal, Dr. Crowder argues the district court erred in finding that he had not been denied procedural due process and that defendant's actions were not "state action."

■ The ultimate issue in determining whether a party is subject to liability under 42 U.S.C. § 1983 is whether the alleged infringement of federal rights is "fairly attributable to the state." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982). Therefore, if the actions of the defendants here were not state action, our inquiry ends. *Rendell-Baker v. Kohn,* 457 U.S. 830, 838, 102 S.Ct. 2764, 2770, 73 L.Ed.2d 418 (1982).

Dr. Crowder claims defendants' actions were 'state action' due to the multiple connections between the hospital and the Commonwealth of Kentucky, Christian County, Kentucky, and the town of Hopkinsville, Kentucky. To support this claim, Dr. Crowder notes, among other things, that: (1) a considerable percentage of the hospital's revenues are derived from governmental sources, including Medicare and Medicaid payments; (2) the hospital is subject to

---

**1.** It should be noted that four signatories of the petition opposing Dr. Crowder's application were also members of the panel who investigated Dr. Crowder's medical practices.

extensive state regulation; (3) the Mayor of Hopkinsville and County Judge/Executive of Christian County serve on the hospital's Board of Trustees by virtue of their public office; and (4) the hospital facility was purchased in 1980 by Christian County and then leased back to the Board of Trustees through a financial arrangement authorized by state statute.

In *Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982), the Supreme Court held that the State of New York could not be held responsible for the decisions of private nursing homes to discharge or transfer patients without notice or an opportunity for a hearing. The plaintiffs in *Blum* contended that state Medicaid regulations "affirmatively" ordered the decisions of the private nursing homes because the nursing homes were required to periodically assess whether their patients were receiving an appropriate level of care warranting the patient's continued stay in the facility. *Blum*, 457 U.S. at 994–95, 102 S.Ct. at 2780–2781. Adopting the standard set forth in *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1975), the Court held that the plaintiffs had to demonstrate "a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Blum*, 457 U.S. at 1004, 102 S.Ct. at 2785, quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. at 351, 95 S.Ct. at 453. *See also Rendell-Baker v. Kohn*, 457 U.S. at 838–40, 102 S.Ct. at 2770–2771. *Newsom v. Vanderbilt University*, 653 F.2d 1100, 1113–16 (6th Cir.1981); *cf. Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. at 937, 102 S.Ct. at 2754. Applying that test, the court found that the plaintiffs in *Blum* had failed to establish "state action" in the nursing homes' decisions to transfer or discharge patients because "[t]hose decisions ultimately turn on medical judgments made by private parties according to professional standards that are not established by the State." *Blum*, 457 U.S. at 1008, 102 S.Ct. at 2788. The Court pointed out that mere approval or acquiescence by the state in

the decision of a private party does not constitute state action. *Id.* at 1004–05, 102 S.Ct. at 2785–2786. *See also Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 164–65, 98 S.Ct. 1729, 1737–1738, 56 L.Ed.2d 185 (1978); *Jackson v. Metro Edison Co.*, 419 U.S. at 357, 95 S.Ct. at 456. Instead, the Court noted that a "State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum*, 457 U.S. at 1004, 102 S.Ct. at 2786.

Factually, *Blum* differs from the present case because the plaintiffs there sued the State of New York in an attempt to hold it responsible for the actions of private nursing homes. Here, Dr. Crowder is suing a private entity claiming that its actions are "state action", even though the state was not directly involved in the challenged activities. This factual difference, however, does not undercut our applying the legal reasoning of *Blum* to the issue posed here. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) (legal reasoning of *Blum* applied when deciding whether private school acted under color of state law when it discharged certain school employees).

■ Dr. Crowder begins by arguing that state action is present because the hospital derives a considerable percentage of its revenues from governmental funding. In *Blum* this same claim was rejected even though the State subsidized the operating and capital costs of the nursing homes, and paid the medical expenses of more than ninety percent of the patients. *Blum*, 457 U.S. at 1011, 102 S.Ct. at 2784. The actions of a private entity do not become state action merely because the government provides substantial funding to the private party. *See Rendell-Baker*, 457 U.S. at 840, 102 S.Ct. at 2771; *Newsom v. Vanderbilt Univ.*, 653 F.2d at 1115; *Jackson v. Norton-Children's Hospitals*, 487 F.2d 502, 503 (6th Cir.1973) (per curiam), *cert. de-*

*nied,* 416 U.S. 1000, 94 S.Ct. 2413, 40 L.Ed.2d 776 (1974).

■ Next, Dr. Crowder contends state action is established because the hospital is subject to extensive state regulation. State regulation of a private entity, even if it is "extensive and detailed," is not enough to support a finding of state action. *Jackson v. Metro. Edison Co.,* 419 U.S. at 350, 95 S.Ct. at 453; *see also Griffith v. Bell-Whitley Community Action Agency,* 614 F.2d 1102, 1109 (6th Cir.), *cert. denied,* 447 U.S. 928, 100 S.Ct. 3025, 65 L.Ed.2d 1122 (1980). In order to invoke the doctrine of "state action," a complaining party must demonstrate a sufficient nexus between the challenged action and the regulatory scheme alleged to be the impetus behind the private action. *See Blum,* 457 U.S. at 1004–05, 102 S.Ct. at 2785–2786; *Watson v. Kenlick Coal Co., Inc.,* 498 F.2d 1183, 1192 (6th Cir.1974), *cert. denied,* 422 U.S. 1012, 95 S.Ct. 2639, 45 L.Ed.2d 677 (1975); *Griffith,* 614 F.2d at 1109. Dr. Crowder has made no such demonstration here. The defendants' decision to restrict Dr. Crowder's staff privileges was based upon an internal investigation concerning Dr. Crowder's surgical and medical performances within the hospital community. Like the situation in *Blum,* this decision "ultimately turn[ed] on medical judgments made by private parties according to professional standards that are not established by the State." *Blum,* 457 U.S. at 1008, 102 S.Ct. at 2788. It was not dictated by a regulatory rule of the state. Therefore, the State cannot be deemed responsible for the ultimate decision to restrict Dr. Crowder's staff privileges. *See Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (Decisions of public defender in representing her client were based upon professional relationship between the attorney and the client, and not dictated by any rule of conduct imposed by the State.).

Dr. Crowder also points out that the Mayor of Hopkinsville and the County Judge/Executive of Christian County, Kentucky serve as ex officio members of the hospital's Board of Trustees. This fact, although an important factor in establishing state action, *see Downs v. Sawtelle,* 574 F.2d 1, 8 (1st Cir.), *cert. denied,* 439 U.S. 910, 99 S.Ct. 278, 58 L.Ed.2d 255 (1978), is insufficiently linked to the challenged actions of the defendants in this case, and therefore, does not warrant a finding of state action.

The hospital is governed by a thirteen-member Board of Trustees. Two members of the Board serve by virtue of holding the public offices of Mayor of Hopkinsville and County Judge/Executive of Christian County, Kentucky. The remaining members are not public officials.

The Board's decision to restrict Dr. Crowder's staff and surgical privileges was made only after a group of physicians from the hospital's Department of Surgery conducted an internal investigation of Dr. Crowder's surgical practice. Their findings and conclusions were submitted in a report to the hospital's Executive Committee, which in turn referred the matter to the hospital's Credentials Committee. The Executive Committee then adopted the recommendations of the internal report. After this action, a hearing was held. The hearing committee also recommended that Dr. Crowder's privileges be restricted. An appellate review committee then affirmed the recommendations of the hearing committee in a written decision. This decision was then submitted to the Board which adopted the recommendation that Dr. Crowder's surgical practice be restricted. Thus, it is manifest that the Board's ultimate decision was made only after four reviewing committees had determined that Dr. Crowder should not be granted additional staff privileges. The Board's decision was not the product of its own investigation and conclusions, but instead the acceptance of medical judgments reached by staff physicians and hospital reviewing committees regarding Dr. Crowder's surgical competence. This decision concerned professional standards of medical fitness; it did not involve custodial or administrative functions which required the Board to

base its decision upon state-imposed guidelines.

Moreover, only two of the Board's thirteen members were public officials. This fact, combined with the knowledge that the Board's decision concerned professional standards of medical fitness, convinces us that the Board's decision cannot be characterized as "state action." Although it is true that this court has found "state action" in similar circumstances, *see O'Neill v. Grayson County War Memorial Hospital*, 472 F.2d 1140, 1143 (6th Cir.1973); *Chiaffitelli v. Dettmer Hospital, Inc.*, 437 F.2d 429, 430 (6th Cir.1971) (per curiam); *Meredith v. Allen County War Memorial Hospital Comm'n*, 397 F.2d 33, 35 (6th Cir.1968), we believe the legal reasoning of these cases is no longer valid in light of the Supreme Court's recent holdings in this area of the law. Rather than looking to the number of public officials who serve on the governing board of a private institution, we believe the proper focus concerns whether the State has exercised "coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum*, 457 U.S. at 1004, 102 S.Ct. at 2786. Undoubtedly there may be situations where state action is manifest in the decisions of a private entity because public officials work behind the scene to influence a particular result, or because powerful and influential public officers add the prestige of their office to the actions or findings of a private institution. In this case, however, this situation does not exist, and there was no state action.

Furthermore, even assuming the continued validity of *Meredith* and its progeny, *see Downs v. Sawtelle*, 574 F.2d 1, 7–8 (1st Cir.), *cert. denied*, 439 U.S. 910, 99 S.Ct. 278, 58 L.Ed.2d 255 (1978); *Jackson v. Statler Foundation*, 496 F.2d 623, 634–35 (2d Cir.1974), this case is distinguishable from *Meredith*, *Chiaffitelli* and *O'Neil* because in each of those cases a majority of the members of the hospital's governing board were accountable to the public. *O'Neil*, 472 F.2d at 1143 ("board of directors shall at all times contain at least one member from each of the County's

magisterial districts"); *Chiaffitelli*, 437 F.2d at 430 ("five of the nine members of the hospital's board of governors are ... responsible to the public"); *Meredith*, 397 F.2d at 34–35 (entire hospital commission "appointed by governing body of Allen County to operate the hospital"). Here, only two of the thirteen board members were responsible to the public. In our view, this is not sufficient state involvement to constitute "a close nexus between the [Commonwealth of Kentucky] and the challenged action of the [hospital's board] so that the action of the latter may be fairly treated as that of the State itself." *Blum*, 457 U.S. at 1004, 102 S.Ct. at 2786, *quoting Jackson v. Metro. Edison Co.*, 419 U.S. at 351, 95 S.Ct. at 453. *See also Aasum v. Good Samaritan Hospital*, 395 F.Supp. 363, 368 (D.Ore.1975), *aff'd*, 542 F.2d 792, 794–95 (9th Cir.1976) (even though three of seven directors of hospital's board are publicly appointed, hospital is not a state actor).

Dr. Crowder further argues that state action is established here because the hospital facility was purchased in 1980 by the governing body of Christian County, Kentucky, and then leased back to the hospital's Board of Trustees through a financial arrangement authorized by State statute. *See* Ky.Rev.Stat. §§ 103.200–103.285. The financial agreement between the hospital and Christian County also provided that the Hospital pledge all future revenue to Christian County in order to secure payment of the County bonds issued to finance the acquisition of the hospital.

In *Hodges v. Metts*, 676 F.2d 1133 (6th Cir.1982), we held government action had not been established in the operation of a private housing complex even though the mortgage secured by the operators had been insured by the federal government under section 221(d)(4) of the National Housing Act, 12 U.S.C. § 17151(d)(4). In *Hodges*, we found that, although the Department of Housing and Urban Development would be entitled to take title on the mortgaged premises in the event of a default by the private owners, HUD's lack of involvement in the day-to-day affairs of the complex and the absence of a nexus be-

tween the challenged action (eviction without cause), and the limited governmental involvement demonstrated that the actions of the private landlord could not be imputed to the government. *Id.* at 1138.

■ Here, although Christian County is the owner and lessor of the hospital's physical plant and assisted in the financing of some of the hospital's construction cost, the fact remains that the County is not involved in the day-to-day operation of the hospital. More importantly, Dr. Crowder has not demonstrated a nexus between the challenged action, the hospital's restriction of his staff privileges, and the limited governmental involvement alleged to provide the basis for a finding of state action, i.e. the County's leasing of the hospital facility to the hospital's Board of Trustees.

*Hampton v. City of Jacksonville,* 304 F.2d 320 (5th Cir.1962), and *Eaton v. Grubbs,* 329 F.2d 710 (4th Cir.1964), do not undermine our decision. In *Hampton,* black residents of the City of Jacksonville sued under the fourteenth amendment two privately owned golf courses when the owners restricted the use of the courses to white patrons only. Despite the defendant's argument that no state action was shown, the Fifth Circuit held the existence of a reverter clause in the deed conveying the city-owned golf courses to private individuals, which had the effect of assuring that the property involved would always remain as golf courses, was itself sufficient to constitute state action. The *Hampton* court stressed that this arrangement guaranteed the City complete control over the golf courses, "even though the daily operation [of the golf courses is] . . . not subject in other matters to the City's discretion." *Hampton,* 304 F.2d at 322. Similarly, in *Eaton,* the Fourth Circuit ruled that two black physicians could maintain an action against a private hospital which had denied them staff privileges on account of their race. The *Eaton* court noted that the defendant hospital held a deed with the city and county governments which assured that the property in question would remain as a hospital. The hospital was also granted tax exempt status, provided significant capital construction subsidies and given the

power of eminent domain to condemn property for use by the hospital. *Eaton,* 329 F.2d at 713–714. These factors, considered together, "demonstrate[d] the pervasive nature of the state's role in the functioning of the defendant hospital, day by day and over the span of years." *Id.* at 715. *See also Downs v. Sawtelle,* 574 F.2d 1 (1st Cir.), cert. denied, 439 U.S. 910, 99 S.Ct. 278, 58 L.Ed.2d 255 (1978) (appointment of entire Board of Directors of hospital by public officials and distribution of hospital's profits to town support finding of "state action"). Here, the factors alleged by Dr. Crowder to constitute stte action do not establish the same type of interdependence between the hospital and the state found in *Hampton* and *Eaton.* Neither the State nor County have become involved in the daily operations of the hospital. Nor can it be said that either the State or County governments retain the type of control over the hospital's long-term future that was evident in *Hampton* and *Eaton.* More importantly, neither government body has positioned itself to the point that it has in effect become a "joint participant in the challenged activity" thereby making the decision to restrict Dr. Crowder's staff privileges state action. *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 725, 81 S.Ct. 856, 862, 6 L.Ed.2d 45 (1961). In sum, we find that the connections between the State and the Jennie Stuart Memorial Hospital are insufficiently linked to the challenged actions of the defendants to warrant a finding of state action in the hospital's decision to restrict Dr. Crowder's staff privileges. Therefore, Dr. Crowder has not stated a claim for relief under 42 U.S.C. § 1983.

Finally, Dr. Crowder asserts the district court evidenced bias and prejudice against him violating his right to a fair trial. We disagree. Recusal motions pursuant to 28 U.S.C. § 144 must be timely filed, contain a good faith certificate of counsel and satisfy substantive requirements of legal sufficiency. *See* 28 U.S.C. § 144; *Davis v. Fendler,* 650 F.2d 1154, 1163 (9th Cir.1981). Failure to follow these requirements "defeats a charge of bias." *Id., cf. Roberts v. Bailar,* 625 F.2d 125, 128 (6th Cir.1980) (failure of

454

party to sign affidavit supports denial of motion to recuse). Dr. Crowder concedes his motion was not timely filed and did not contain a proper certificate of counsel. However, he asserts good cause is shown because the claim of bias was raised "when first discovered and ... the [d]istrict [c]ourt had a duty to disclose such [bias] at the outset of litigation, even though in the Court's opinion, it would not influence the decision." In support of this claim, Dr. Crowder points to several comments of the district court in its memorandum opinions dismissing his lawsuit.

 Motions for recusal should be timely filed. "Promptness in asserting disqualification is required to prevent a party from awaiting the outcome before taking action." *Davis v. Cities Service Oil Co.*, 420 F.2d 1278, 1282 (10th Cir.1970), citing *In re United Shoe Machinery Corp.*, 276 F.2d 77, 79 (1st Cir.1960). Here, Dr. Crowder waited until twelve days after the district court dismissed his complaint before filing his recusal motion. This failure to follow the requirements of 28 U.S.C. § 144 therefore defeats Dr. Crowder's motion for recusal.

The judgment of the district court is affirmed.