Glenn R. BLACK, M.D.,
Plaintiff–Appellee,

v.

BARBERTON CITIZENS HOSPITAL,
Defendant–Appellant.

No. 97–3182.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 8, 1997.

Decided Jan. 23, 1998.

---

F. Thomas Vickers (argued and briefed), Lawrence F. Peskin (briefed), Ulmer & Berne, Cleveland, OH, for Defendant–Appellant.

Gail E. Sindell (argued and briefed), Frank R. DeSantis (briefed), Kaufman & Cumberland, Cleveland, OH, for Plaintiff–Appellee.

Before: KENNEDY, JONES and CLAY, Circuit Judges.

KENNEDY, Circuit Judge.

Defendant, Barberton Citizens Hospital, appeals the order of the District Court denying its motion to dissolve a preliminary injunction prohibiting disciplinary action against the plaintiff, Dr. Glenn Black, issued by the state court prior to removal of the action. Because we find that in all events the injunction must be modified, and that it must be stayed until we are provided with findings of fact, the case is **REMANDED** to the District Court. The District Court is also instructed to determine, on remand, whether the preliminary injunction has become moot in view of the sale of the hospital to a private entity, and whether jurisdiction is proper in federal court.

## I.

This action arises out of the decision of the Board of Trustees of Barberton Citizens Hospital, a non-profit hospital in Barberton, Ohio, to place Dr. Black, a cardiologist with medical staff privileges at Barberton, on probation for allegedly engaging in thirty-nine incidents of disruptive conduct at the hospital.[1] The probationary terms included the designation of a neutral arbitrator who would receive and screen all written complaints regarding Dr. Black's conduct. If the arbitrator deemed a complaint meritorious, the arbitrator was to schedule an arbitration hearing on the complaint. On November 14, 1995, two written complaints were submitted to the arbitrator; however, the arbitrator concluded that the complaints did not warrant a hearing. Approximately four months later, the arbitrator received another written complaint. Before the arbitrator determined whether the complaint warranted a hearing, Dr. Black filed the instant action in the Summit County Court of Common Pleas in Ohio against Barberton and Michael Frank, the Chief of Staff at Barberton, alleging (1) the procedures used to discipline Dr. Black amounted to a breach of contract; (2) promissory estoppel; (3) intentional interference with business relationships; (4) violation of procedural due process; (5) civil conspiracy; (6) and disclosure of confidential information. Black sought money damages, a temporary retraining order, and a preliminary or permanent injunction.

Following three days of hearings on Black's motion for a preliminary injunction, the state court, on April 22, 1996, issued a preliminary injunction order which enjoined the defendants from: (1) taking any disciplinary action against Dr. Black; (2) preparing, processing, or disseminating incident reports to the arbitrator selected by the Board of Trustees of the Hospital; (3) further employing the arbitration process established by such Board; and (4) imposing any further conditions, terms or penalties on Dr. Black,

---

**1.** Prior to the Board's final decision, the complaints regarding Dr. Black's behavior were reviewed by a sub-committee of the Executive Medical Counsel, the Executive Medical Counsel, a Fair Hearing Committee, again by the Executive Medical Counsel, by an Appellate Review Body, and by a Joint Conference Committee.

including suspension, by the Board of Trustees of the Hospital or the selected arbitrator.

On May 17, 1996, Dr. Black filed an amended complaint adding Carlos Saavedra, a member of Barberton's medical staff, as a defendant and adding claims under 42 U.S.C. § 1983 and the Equal Protection Clause of the United States Constitution. Defendants, thereafter, removed the case to the United States District Court for the Northern District of Ohio. Shortly after removing the case, defendants filed a motion to dissolve the preliminary injunction or, in the alternative, for appointment of a special master. Defendants alleged that dissolution of the preliminary injunction was necessary due to incidents that arose subsequent to the issuance of the injunction by the state court.[2] Namely, defendants alleged that Dr. Black failed to timely respond to pages from emergency room physicians and nurses; defendants additionally cited four medical malpractice actions filed against Dr. Black. Defendants argued that the injunction should be dissolved in order submit the recent incidents to the arbitration process. Defendants further contended that the preliminary injunction was improvidently granted by the state court.

On January 28, 1997, the District Court denied both the motion to dissolve the preliminary injunction and the motion to appoint a special master. Regarding the dissolution of the preliminary injunction, the court concluded that it would not reconsider Dr. Black's likelihood of success on the merits, one of the factors to be considered in determining whether a preliminary injunction should issue. The court would not do so because it did not "have the record of proceedings before the Common Pleas Court, and therefore [could not] even assess the evidence that court considered." J.A. 12. Consequently, the court concluded that it had "an insufficient basis for reconsidering the Common Pleas Court's determination that Dr. Black was likely to succeed on the merits of his claims." J.A. 12. The court further found that the recent incidents involving the delayed responses to pages and the medical

malpractice claims did not warrant dissolution or modification because the incidents were "precisely the kinds of allegations which the preliminary injunction order contemplated and intended to restrain." J.A. 12. Urging that the District Court erred in not reconsidering the propriety of granting the preliminary injunction and in not dissolving it, Barberton appeals from the District Court's order denying its motion to dissolve the preliminary injunction.

## II.

### A. Subject Matter Jurisdiction

■ The sole basis for federal jurisdiction, and thus removal of this case to federal court, is plaintiff's claim under 42 U.S.C. § 1983 and the Equal Protection Clause. To maintain an action under § 1983, a plaintiff must establish that he was "deprived of a right secured by the Federal Constitution or laws of the United States by a person acting under color of state law." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir.1992); *see also Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir.1995). To determine whether a party's action constitutes state action, we ask whether the party's action may be " 'fairly attributable to the state.' " *Wolotsky*, 960 F.2d at 1335 (quoting *Lugar v. Edmondson Oil.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982)).

■ Similarly, the Equal Protection Clause prohibits only discrimination by the State, not by a private actor. *See Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 172, 92 S.Ct. 1965, 1971, 32 L.Ed.2d 627 (1972). "[P]rivate conduct, 'however discriminatory or wrongful,' against which that clause 'erects no shield.' " *Id.* (quoting *Shelley v. Kraemer*, 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948)).

It is questionable whether Black can establish that Barberton is a state actor, and thus confer jurisdiction in federal court, under this Circuit's decision in *Crowder v. Conlan*, 740 F.2d 447 (6th Cir.1984). In *Crowder*, we held that a private hospital was not a state actor for purposes of section 1983 even

---

2. Defendants sought the appointment of a special master to hear evidence and report to the court

regarding the incidents that arose after the injunction was issued.

though the hospital received public funding, was subject to state regulation, had two public officials serving on its board of trustees, and had been purchased by the county and then leased back to the hospital's board of trustees through a financial arrangement authorized by state statute. *Id.* at 450–53. In his complaint, Black alleges that "[d]ue to its connection with the state of Ohio and local political units, the significant governmental financial assistance it receives, and its geographic monopoly, Barberton Citizens Hospital is a public hospital." J.A. 66. Plaintiff further alleges that Barberton "receives tax benefits because of its status as a nonprofit hospital," "constitutes a virtual monopoly in the area in which it functions, and performs a public function," "was created by a resolution for the City of Barberton and over the years has been financed by a number of public bonds, the City of Barberton exercises authority and/or exerts control over the operation of Barberton Citizens Hospital," and further that "[u]pon the sale of Barberton Citizens Hospital all assets are required by statute to be directed to the City of Barberton." J.A. 92.

While Dr. Black has alleged numerous ways in which the City of Barberton has been involved with Barberton Citizens Hospital, no factual determinations have been made as to whether the City, or State or County for that matter, has become involved in the daily operation of the hospital or in the disciplinary process of the medical staff, or that it has retained coercive control over the hospital. While Dr. Black has alleged that the City exerts control over the hospital, without factual findings regarding involvement of this kind, we cannot determine whether, as a matter of law, a nexus exists between the challenged action, the hospital's disciplinary action against plaintiff, and the governmental involvement of the City of Barberton, which we required in *Crowder.* We, thus, remand the case to the District Court to determine whether there exists the state action required to maintain an action under 42 U.S.C. § 1983 or to state a claim for a violation of the Equal Protection Clause and, accordingly, whether this case may properly remain in federal court.

## B. Modification/Dissolution of the Preliminary Injunction

■ Defendants sought dissolution or modification of the preliminary injunction before the District Court citing to several incidents that arose subsequent to the issuance of the injunction by the state court. Specifically, defendants alleged that Dr. Black failed to timely respond to pages from emergency room physicians and nurses; additionally, defendants cited four medical malpractice actions filed against Dr. Black. Barberton argued that the injunction should be dissolved in order to submit the recent incidents to the arbitration process or, alternatively, for the appointment of a special master to hear complaints against Dr. Black as they arise.

■ We agree that the preliminary injunction issued by the state court must be modified. As written, the injunction does not permit Barberton to investigate or discipline any form of wrongdoing committed by Dr. Black subsequent to the issuance of the preliminary injunction. Because new complaints have arisen, the preliminary injunction has not maintained the status quo. Regardless of the nature of the incidents at issue in this case, we conclude that, as a matter of law, a hospital must be permitted to address charges of incompetence or any form of less than satisfactory performance by a physician. As we stated in *Yashon v. Hunt,* 825 F.2d 1016 (6th Cir.1987), "[h]ospitals have an important 'interest in quickly dealing with incompetence and debilitating personal frictions,' in order to ensure '[e]ffective performance by physicians on the staff ... whose tasks require a high degree of cooperation, concentration, creativity, and the constant exercise of professional judgment." *Id.* at 1022 (quoting *Stretten v. Wadsworth Veterans Hosp.,* 537 F.2d 361, 368 (9th Cir.1976)). Enjoining Barberton from addressing and/or disciplining a physician for any event occurring subsequent to the issuance of the preliminary injunction potentially subjects the hospital to liability and the public to possible injury; an injunction which does so must be modified.

Arriving at the conclusion that the injunction must be modified and directing the district court to provide an avenue for Barberton to address subsequent disciplinary issues requires a determination as to what modification is needed to provide a suitable avenue for possible discipline. While the state court conducted three days of hearings before ruling on the motion for the preliminary injunction, we have before us only the order granting the motion which, while articulating the factors to be considered in determining whether a preliminary injunction is warranted, contains no findings of fact regarding the allegations made by either party. Most significantly, the state court did not make any findings of fact as to whether the process and procedures utilized by Barberton to investigate complaints against Dr. Black were biased or otherwise invalid. Upon removal, the District Court, as it states, did not review the entire transcript of the state court proceedings and it did not conduct an evidentiary hearing before determining whether to dissolve or modify the injunction. Without findings of fact from the state court and without the benefit of an evidentiary hearing, the District Court and this Court lack sufficient information to determine an appropriate modification of the injunction. Without knowing in what respect the disciplinary process was unsatisfactory, neither this Court nor the District Court is able to designate a satisfactory method for addressing the recent incidents and any future complaints. Without factual findings, it is not possible to determine, for example, whether a Fair Hearing Committee comprised of newly appointed members and the removal of Dr. Frank from the disciplinary process would accommodate the plaintiff's complaints regarding the disciplinary process. Thus, on remand, the District Court should either review the entirety of the proceedings before the state court or conduct its own evidentiary hearing and, if it determines that the injunction should continue upon completion of either, modify it to include an appropriate avenue to address the recent incidents and any complaints which may arise in the future.

Before determining an appropriate modification of the injunction, however, the District Court should examine whether this action has become moot. Shortly before oral argument, this Court learned from the parties that Barberton Hospital was sold to a private, for-profit organization. While the parties, at the instruction of this Court, submitted additional briefing addressing the issue of mootness, we are unable to resolve the mootness question based on the facts presented. We, therefore, instruct the District Court to address this issue. If the court determines that the case is not moot, it may then proceed to appropriately modify or dissolve the injunction.

### III.

For the foregoing reasons, the case is **REMANDED** to the District Court for further proceedings consistent with this opinion. In summary, the District Court is instructed to determine whether the injunction has become moot and whether jurisdiction is proper in federal court. If the injunction is not moot and jurisdiction is proper, the court must then either review the entirety of the proceedings before the state court or conduct its own evidentiary hearing and, upon completion of either, dissolve the injunction or modify it to include an appropriate avenue to address the recent incidents and any complaints which may arise in the future. In the interim, the injunction is stayed.