NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0022n.06

No. 25-1315

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>

BRIAN W. BENDEROFF,

    Plaintiff-Appellant,

v.

ERIK JOHANSEN; JEFF ADAMISIN;
JOSEPH PRESLEY; MICHAEL
WILLIAMS; BRIAN HELMERSON;
MARK VAUGHAN; DEVALLONS
DESMARETS; JEROME DEAVEN;
CHRIS WALTER,

    Defendants-Appellees.

</td><td>

)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)

</td><td>

**FILED**
Jan 13, 2026
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF
MICHIGAN

OPINION

</td></tr>
</table>

Before: GIBBONS, STRANCH, and DAVIS, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Brian W. Benderoff appeals the dismissal of his unlawful detention and malicious prosecution claims under the Fourth, Fifth, and Fourteenth Amendments and 42 U.S.C. § 1983. He contends that the district court erred in determining that the Defendants were acting under color of federal, rather than state, law and that no implied cause of action existed to sue these federal actors. He also appeals the district court's denial of his motion seeking reasonable service-related expenses. For the following reasons, we **AFFIRM**.

## I. BACKGROUND

On June 23, 2016, Benderoff and a friend were detained at the Detroit Airport by multiple law enforcement officers (the "Defendant Officers"), including Defendants Erik Johansen of the Wayne County Airport Authority, Jeffrey Adamisin of the Taylor Police Department, and Joseph

Presley allegedly[1] of the Wayne County Airport Authority (the "State Defendants"). The remaining Defendant Officers worked for the Department of Homeland Security in its Investigations Unit ("HSI"), including Michael Williams, Brian Helmerson, Mark Vaughan, Devallons Desmarets, Jerome Deaven, and Chris Walter (the "Federal Defendants"). The parties agree that at least some of the State Defendants served as part of a joint state/federal task force dedicated to identifying and stopping illegal activity at domestic airports.

According to Benderoff's Amended Complaint, four officers, including Johansen and Presley, intercepted Benderoff at the Detroit Airport, and they transported him in a government SUV from the airport to an offsite building known as the HSI Prisoner Processing Unit. There, they allegedly detained him for over ten hours. During this time, several of the Defendant Officers questioned him until he implicated himself in an allegedly fraudulent financial scheme, after which he was released.

Over four years later, on August 26, 2020, Benderoff was indicted in the United States District Court for the Eastern District of Michigan on charges related to insurance fraud. On September 12, 2022, the district court dismissed the indictment as time-barred. Benderoff then sued the Defendant Officers for unlawful detention and malicious prosecution, in violation of 42 U.S.C. § 1983 and the Fourth, Fifth, and Fourteenth Amendments. Defendants moved to dismiss the action, and the district court granted the motion. The court dismissed the § 1983 claims on the basis that the State Defendants were acting under color of federal law, and it dismissed the claims against the Federal Defendants by declining to find an implied right-of-action under *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Benderoff appeals

---

[1] While Benderoff alleges that Presley worked for the Wayne County Airport Authority, as discussed below, the record indicates that he was actually employed by the Department of Homeland Security at the time of the events in question.

the district court's dismissal of his claims and its denial of his motion seeking reasonable expenses based on two Defendants' failure to waive service. We address each claim in turn below.

## II.    DISCUSSION

### A.    Standard of Review

We review de novo a district court's grant of a motion to dismiss. *Warman v. Mount St. Joseph Univ.*, 144 F.4th 880, 888 (6th Cir. 2025). This review accepts as true the well-pleaded allegations in the complaint and views the facts in the light most favorable to the plaintiff. *Id.* We then "examine whether the complaint contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Hile v. Michigan*, 86 F.4th 269, 273 (6th Cir. 2023) (quoting *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017)). But any "'legal conclusion couched as a factual allegation' need not be accepted as true." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

### B.    The Section 1983 Claims

To state a § 1983 claim, a plaintiff must allege that he was deprived of a constitutional right, and that the deprivation was caused by individuals acting under color of state law. *See Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). The defendant's alleged constitutional infringement, therefore, must be "fairly attributable to the state." *King v. United States*, 917 F.3d 409, 432 (6th Cir. 2019), *rev'd on other grounds in Brownback v. King*, 592 U.S. 209 (2021) (quoting *Crowder v. Conlan*, 740 F.2d 447, 449 (6th Cir. 1984)). A defendant may act "under color of state law" despite participating in a joint federal and state program, depending "on the actual nature and character of that action." *King*, 917 F.3d at 432–33 (citation modified).

Benderoff claims that the district court erred in finding that the State Defendants were acting under color of federal law because they were full-time local law enforcement officers despite participating in a joint state/federal task force. The Amended Complaint alleges that the underlying incident began when TSA agents reported Benderoff and his friend to an HSI tip line because they were carrying large amounts of cash from gambling proceeds. HSI sent four officers, including Johansen and Presley, to intercept Benderoff upon his arrival at the Detroit Airport. The officers transported him in a government SUV to the HSI Prisoner Processing Unit. Benderoff alleges that he remained in HSI custody for over ten hours and that Johansen and Presley personally contributed to detaining him in the HSI building. He also alleges that Adamisin was present in the building and contributed to his detention. These allegations underscore that HSI—and not the state—directed and authorized Benderoff's detention as it sent officers to detain Benderoff, transport him to an HSI facility, and keep him there until his release. Similarly, we found that a state law enforcement officer who was working full time with an FBI task force was acting under color of federal law, explaining that the complaint failed to allege that the state was "involved in authorizing or administering the task force." *King*, 917 F.3d at 433.

Benderoff alleges that Johansen, Presley, and Adamisin were full-time local law enforcement officers, but a police report drafted by Adamisin shows that he was working at the Detroit Airport as a Task Force Officer assigned to HSI during the events in question.[2] And employment records show that Presley was employed with the Department of Homeland

---

[2] A document attached to a motion to dismiss can form part of the pleadings where the complaint refers to this document and it is central to the plaintiff's claim. *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999). Benderoff refers to the police report in his Amended Complaint, *see* R. 25, Am. Compl. PageID 140, and the report—which details Benderoff's arrest—is central to his claim of unlawful detention. We therefore consider this document on appeal.

Security—and not the state—at that time.[3] Even though Johansen is alleged to be a state law enforcement officer working in a joint federal/state task force, that allegation is insufficient to show that he was acting under color of state law because nothing in Benderoff's Amended Complaint alleges that state or local law enforcement authorities directed or authorized Benderoff's detention.

On this record, we find that Johansen, Adamisin, and Presley were acting under color of federal law, and are therefore not liable under § 1983 as state actors.

## C. The *Bivens* Claims

In *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court recognized an implied cause of action against federal employees for "particularly egregious" Fourth Amendment violations in unlawful search and seizure cases. *Jacobs v. Alam*, 915 F.3d 1028, 1035 (6th Cir. 2019). Since *Bivens*, the Supreme Court has recognized an implied cause of action in only two other contexts: a case involving sex discrimination that violated the Fifth Amendment and a personal injury suit under the Eighth Amendment. *Davis v. Passman*, 442 U.S. 228 (1979) (sex discrimination claim under the Fifth Amendment); *Carlson v. Green*, 446 U.S. 14 (1980) (personal injury suit under the Eighth Amendment). To determine if an implied cause of action exists, courts must first "ask whether the case presents a new *Bivens* context—i.e., is it meaningfully different from the three cases in which the Court has implied a damages action." *Enriquez-Perdomo v. Newman*, 149 F.4th 623, 631 (6th Cir. 2025) (citation modified). For instance, in *Jacobs*, we held that "run-of-the-mill challenges

---

[3] When reviewing a motion to dismiss, a court may "take judicial notice of 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." *Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023) (citation modified). Courts may consider such records for the truth of their statements only when the "contents prove facts whose accuracy cannot reasonably be questioned." *Id.* (citing *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005)). The accuracy of Presley's employment records cannot reasonably be questioned, and Benderoff does not do so here.

to 'standard law enforcement operations' . . . fall well within *Bivens* itself." 915 F.3d at 1038 (6th Cir. 2019) (authorizing *Bivens* action for excessive force, false arrest, malicious prosecution, fabrication of evidence, and civil conspiracy). But if the case presents a new *Bivens* context, courts ask whether there are "special factors" suggesting that Congress is at least arguably better equipped than the courts to "weigh the costs and benefits of allowing a damages action to proceed." *Enriquez-Perdomo*, 149 F.4th at 631 (citation modified). Benderoff concedes that if his claims arise in a new context, then his claims fail because there are special factors counseling against finding a *Bivens* remedy. Therefore, we analyze only whether this case presents a new *Bivens* context.

Merely bringing a claim for a Fourth or Fifth Amendment violation does not mean that the case is sufficiently similar to *Bivens* or *Davis* such that a remedy exists. *Id.* Instead, courts look to the context in which the claim arose. *Id.* The Supreme Court has enumerated a non-exhaustive list of factors to consider, including

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar v. Abbasi*, 582 U.S. 120, 140 (2017). The district court found that Benderoff's case presents a new *Bivens* context because he was seized and interrogated in an international airport by DHS agents, not in the context of the defendant's home as in *Bivens*. Benderoff argues that the district court erred in this decision because his claims are "run-of-the-mill Fourth Amendment claims against line-level law-enforcement officers," just as in *Bivens*.

In *Bivens*, agents with the Federal Bureau of Narcotics handcuffed the defendant, entered his home, and conducted a warrantless search of his residence. 403 U.S. at 389. In cases involving governmental intrusion of the defendant's home, the "Fourth Amendment's protections are at the height of their power." *Enriquez-Perdomo*, 149 F.4th at 633. But Benderoff's case involves alleged Fourth Amendment violations that occurred in an international airport. The expectation of privacy that Benderoff would have had there, in a public space with heightened security, would be much less than he would have had in his home. This difference in expectation of privacy implies a new *Bivens* context. *See id.* at 633 (finding that the case presented a new *Bivens* context, in part, because the alleged constitutional violations occurred in "a different legal backdrop with different legal standards."). And the Federal Defendants here—all DHS agents—are different from the Federal Bureau of Narcotics agents in *Bivens*, which can also create a new *Bivens* context. *Egbert v. Boule*, 596 U.S. 482, 492 (2022). Furthermore, Benderoff's alleged Fifth Amendment violations—the claims of malicious prosecution and unlawful detention—are different from the sex discrimination claims in *Davis*. And because a new *Bivens* context exists if "it differs in virtually any way from the *Bivens* trilogy," *Elhady v. Unidentified CBP Agents*, 18 F.4th 880, 883 (6th Cir. 2021), this case presents a new *Bivens* context. We therefore decline to find an implied right of action and affirm the district court's dismissal of the *Bivens* claims.

### D.      The Claims for Reasonable Expenses of Service

Benderoff appeals the district court's denial of his motion seeking reasonable expenses of service based on the failure of two Defendants to waive service. The parties agree that we review such a decision for an abuse of discretion. Pursuant to Federal Rule of Civil Procedure 4(d)(2), the court must impose on the defendant reasonable expenses related to service if the defendant fails to timely waive service without good cause.

Benderoff properly served two Defendants—Devallons Desmarets and Chris Walter—on November 20, 2023. Despite receiving a waiver form, both Desmarets and Walter failed to waive service by the waiver deadline. Benderoff properly served these two Defendants in mid-January and spent approximately $242.00 to do so. Benderoff then filed a motion to recover these expenses as well as $948.75 in attorney's fees, for a total of approximately $1,068.40 in costs for each Defendant. The district court denied the motion, finding that Desmarets and Walter had good cause for not waiving service.

After Desmarets and Walter learned of Benderoff's Complaint, they each requested that the Department of Justice ("DOJ") represent them. As federal employees sued in their individual and official capacities for actions that appeared to be within the scope of their employment, they were entitled to seek DOJ representation. *See* 28 C.F.R. § 50.15(a)(1)–(12). But that process requires multiple steps and can be time consuming. While their requests with the DOJ were pending, Desmarets and Walter did not respond to the request to waive service, and the deadline passed. On February 9, 2024, the district court granted Defendants' request for an extension of time to respond to the Complaint because they were still waiting for the DOJ's response. Later in February 2024, the DOJ approved their requests for representation. Based on these facts, Desmarets and Walters properly requested legal representation from the DOJ within days of receiving the Complaint. They were legally entitled to this representation and were not responsible for the time it took the DOJ to respond.

The district court did not abuse its discretion in finding that Desmarets and Walter had good cause for not waiving service, and we affirm.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.