**Roy E. JONES, Plaintiff–Appellant,**

**v.**

**Tony A. DUNCAN, R.L. Byrd; Michael R. Gunter, James T. Jones, William Marlowe, Wayne Russell, Jerry L. Jones, Fred Copeland, Larry C. Duncan, Tommy Kilby, Billy R. Kreis, James Adams, Samuel D. Williams, and Morgan County Commission also known as Morgan County Quarterly Court, Defendants–Appellees.**

**No. 87–5172.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 15, 1987.

Decided March 7, 1988.

David H. Dunaway, Dunaway, Harrell and Van Hook, Lisa M. Countiss (argued), LaFollette, Tenn., for plaintiff-appellant.

Joe R. Judkins, Wartburg, Tenn., Robert H. Watson, Jr. (argued), Knoxville, Tenn., for defendants-appellees.

Before MARTIN and GUY, Circuit Judges, and JOHNSTONE, District Judge.*

---

* Honorable Edward H. Johnstone, United States District Court, Western District of Kentucky, sitting by designation.

RALPH B. GUY, Jr., Circuit Judge.

Plaintiff, Roy E. Jones, filed suit in federal court pursuant to 42 U.S.C. §§ 1983 and 1985 against the Morgan County Commission and the individual commissioners in their official capacities. Plaintiff alleged that members of the Commission had filed suit in state court seeking his removal from the office of Superintendent of Morgan County Schools. Plaintiff's federal civil rights claims are essentially based on allegations of malicious prosecution. The federal district court granted defendants' motion to dismiss under Fed.R.Civ.P. 12(b)(6), finding that the defendants had acted in their unofficial capacities as private citizens; hence, defendants' actions were not taken under color of state law as is required in suits brought under section 1983. Because we find that the requisite element of state action has been alleged, the order of dismissal is reversed.

## I.

In June of 1983, Tony Duncan, the Morgan County Executive and Chairman of the County Commission, was informed by the county trustee that expenditures by the county school system had exceeded the amount allocated for that purpose by the Commission. Duncan authorized the payment of $20,000 from the county's general fund to cover the initial overdrafts, but instructed the bank not to honor any additional claims. Thereafter, Duncan contacted the state comptroller's office and requested an audit of the school system's financial status. The audit revealed that the system had spent approximately $300,000 more than what was allowed under the county school budget.

In response to the audit, the Morgan County Commission formed an investigative committee to determine the cause of the deficit in the school system's budget. The committee conducted hearings and interviewed several people involved in purchasing for the school system. The committee concluded that numerous items had been purchased with school funds that had not been used for educational purposes and that the county board of education had approved these expenditures. Some of the evidence before the committee showed that Jones had specifically recommended against making at least some of these expenditures. Superintendent Jones refused to appear before the committee and the committee had no subpoena powers with which to compel his appearance. At the conclusion of the investigation, the Commission unanimously passed a resolution which called for Jones' resignation. The resolution also instructed the county executive to take the necessary steps to institute ouster proceedings against Jones if he did not resign. The Commission rejected a proposal to adopt a similar measure which would have been directed against the entire school board. At the time this action was taken, Jones already had an action pending against the Commission for refusing to supply counsel to him in connection with a civil rights action in which he was a defendant. Some of the commissioners talked about "counter-suing" Jones, and it is clear that, at best, they had no hard evidence against Jones but wanted to clear the air and adopted a "let the chips fall where they may" approach to the proposed litigation.

Jones refused to resign and the Morgan County attorney advised the Commission that he would not file a statutory ouster proceeding against Jones. Members of the Commission, using county funds, hired a private attorney to act as a "special prosecutor" to pursue this matter. The attorney advised the defendants that the Commission itself could not institute proceedings under the Tennessee statutory ouster provisions. The statute, however, provided that an ouster proceeding could be brought by ten or more citizens or freeholders of Morgan County. Accordingly, twelve commissioners voluntarily filed an ouster proceeding as individual citizens of Morgan County. The state court granted Jones' motion for a directed verdict in the ouster proceeding following the presentation of plaintiff's proofs. The state court ruled that the Commission members who were acting as "relators" in the ouster proceedings had failed to establish a *prima facie* case. The Commission members did not

appeal the dismissal of their state court action.

Jones was subsequently defeated in an attempt to gain reelection as superintendent of the county school system. He thereafter brought suit in federal court against the county commissioners who had previously instituted the unsuccessful ouster proceedings against him in state court. In his complaint, Jones brought claims under 42 U.S.C. §§ 1983 and 1985 alleging that defendants had "maliciously prosecuted" the plaintiff "with an intent to deprive the plaintiff of his rights and privileges guaranteed by the Constitution and the laws of the United States." The complaint did not specify exactly which federal statutory or constitutional rights had been violated.

█ As previously noted, the district court granted the defendants' motion to dismiss under Fed.R.Civ.P. 12(b)(6), finding that plaintiff had failed to allege the state action element necessary to state a claim under section 1983. Specifically, the court found that the defendants were being sued for instituting the ouster proceedings against Jones and that, according to Tennessee law, such proceedings could only be brought by certain select government officials or by ten citizens of the county.[1] Since the county attorney had refused the commissioners' request to bring the proceedings, the commissioners had to act as individual citizens in order to gain standing to proceed with the suit. Thus, the district court reasoned that commissioners could not have been acting in their official capacities when they instituted the ouster proceedings against Jones. Accordingly, the court concluded that Jones had failed to

show that the defendants' actions were taken "under color of law" as is required under section 1983. Therefore, the district court dismissed the plaintiff's suit.[2]

## II.

In *Dunn v. Tennessee*, 697 F.2d 121 (6th Cir.1982), *cert. denied sub nom. Wyllie v. Dunn*, 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983), this court reiterated the standard used for reviewing the sufficiency of the allegations in a complaint for an action under section 1983:

> Dismissals of complaints under the civil rights statutes are scrutinized with special care. A complaint need not set down in detail all the particularities of a plaintiff's claim against a defendant. Rule 8(a)(2) simply requires 'a short and plain statement of the claim showing that the pleader is entitled to relief....' Fed.R. Civ.P. 8(a)(2). All a complaint need do is afford the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.' [cites omitted]. A motion to dismiss under Rule 12(b)(6) should not be granted 'unless *it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.*' [cites omitted]. [emphasis added].

*Dunn*, 697 F.2d at 125 (quoting *Westlake v. Lucas*, 537 F.2d 857, 858–59 (6th Cir. 1976)).

In order to state a claim under section 1983, a plaintiff must allege two elements: (1) the plaintiff must show a deprivation of rights secured by the "Constitution and

---

1. Tenn.Code Ann. § 8–47–110 provides:

   The petition or complaint shall be in the name of the state and may be filed upon the relation of the attorney general of the state, or the district attorney general for the state, or the county attorney in the case of county officers, and of the city attorney, or the district attorney general, in the case of municipal officers; and in all cases it may be filed, without the concurrence of any of said officers, upon the relation of ten (10) or more citizens and freeholders of the state, county, or city, as the case may be, upon their giving the usual security for costs.

2. The district court issued an order dismissing the entire action including Jones' section 1985 claims. The order is part of a memorandum opinion which is devoted exclusively to the issue of state action under section 1983. Neither the order nor the opinion contain any reference to plaintiff's section 1985 claims. Moreover, neither of the parties addressed the section 1985 claim on appeal. Under these circumstances, we find it appropriate to refrain from expressing an opinion on the merits of the plaintiff's section 1985 claims. Rather, we instruct the district court to consider this issue separately on remand in addition to the plaintiff's section 1983 claims.

laws" of the United States, and (2) plaintiff must show that the defendant deprived him of this federal right "under color of law." [3] *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970).

Given the facts alleged in this case, we find that the district court erred in ruling that the plaintiff had failed to properly allege that the defendants acted under color of law. In reaching this conclusion, the court focused solely on the fact that, under Tennessee law, the ouster suit could only be brought by the defendants acting as individual citizens and not in their official capacity as commissioners. The district court, however, ignored all of the predicate actions taken by the defendants in their official roles which led to the unsuccessful ouster proceedings and could serve as the basis for a malicious prosecution suit. Thus, the use of defendants' names as relators in the ouster proceeding against Jones was merely the culmination of a whole series of earlier actions taken by the defendants in their official capacities as commissioners with the intent of removing plaintiff from his office. Lending their names to the suit as plaintiffs was actually the least of the actions involved in this scenario. The commissioners could have as easily had their spouses be the named plaintiffs. It was the exercise of their official power to set the wheels in motion to bring the suit and their financing of the suit that qualifies as "state action."

The defendants rely heavily on our decision in *Crowder v. Conlan*, 740 F.2d 447 (6th Cir.1984). In *Crowder*, a physician brought a section 1983 action against a hospital alleging that the denial of his staff privileges violated his civil rights. In order to show state action, the plaintiff alleged the existence of several factors including: (1) a large percentage of the hospital's revenues were derived from government sources, including Medicare and Medicaid; (2) extensive state regulation of the hospital; (3) the hospital board of trustees included two local officials; and (4) the hospital facilities were owned by the county and leased back to a private organization.

In analyzing the sufficiency of these allegations, this court relied on the general test established by the Supreme Court, i.e., "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly attributed to the State itself." 740 F.2d at 450 (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974)). *See also Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982). Applying this standard, the *Crowder* court found that the receipt of government payment for the treatment of welfare patients was not sufficiently related to the revocation of plaintiff's staff privileges. Likewise, the state regulation of the hospital was not enough to convert the challenged activities into state action. The Court also noted that only two of the Hospital Board's thirteen members were public officials and that this did not establish the requisite showing that the State had exercised "coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Crowder*, 740 F.2d at 452

---

**3.** 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall

be considered to be a statute of the District of Columbia.

The decision of the district court was based entirely on the court's finding that the plaintiff had failed to allege facts which could support a finding that the defendants had acted under "color of law." The district court did not rule on the sufficiency of the plaintiff's allegations with respect to the other element of his section 1983 claim, i.e., the violation of a federally protected right. This issue was not fully considered by the court below and we decline the defendants' invitation to address it for the first time on appeal.

(quoting *Blum*, 457 U.S. at 1004, 102 S.Ct. at 2786). In sum, the court found that "the connections between the State and the ... Hospital are insufficiently linked to the challenged actions of the defendants to warrant a finding of state action in the hospital's decision to restrict Dr. Crowder's staff privileges." 740 F.2d at 453.

The facts in the instant case stand in stark contrast to those presented in *Crowder*. First, the group of defendants which brought the ouster proceedings against the plaintiff contained not just one or two public officials, but was made up entirely of county commissioners. *Cf. Downs v. Sawtelle*, 574 F.2d 1, 8 (1st Cir.), *cert. denied sub nom. Hagan v. Downs*, 439 U.S. 910, 99 S.Ct. 278, 58 L.Ed.2d 255 (1978) ("[T]he appointment by the state of a majority of an institution's board is either determinative of state action or an important factor in establishing state action."). Even more importantly, the expenditure of public funds involved in this case was made for the express purpose of financing the challenged activity of the defendants, i.e., the legal costs associated with the filing of the ouster proceedings. Thus, unlike the facts in *Crowder*, there is a direct nexus between the membership and actions of the Commission and the identity and allegedly illegal actions of the defendants.

We emphasize that none of the individual factors considered above necessarily compel a finding that the defendants had acted under color of law. We merely hold that when considered in combination, these allegations are adequate to withstand a motion for dismissal made pursuant to Fed.R. Civ.P. 12(b)(6). Our reversal of the dismissal will also require the district court to now consider any other defenses, such as qualified immunity, which may have been advanced but not resolved, as well as other theories of liability advanced by the plaintiff.

REVERSED and REMANDED for further proceedings not inconsistent with this opinion.