William A. BARKLEY, Plaintiff,

v.

CITY OF JACKSON, TENNESSEE, et al., Defendants.

No. 82–1209.

United States District Court,
W.D. Tennessee, E.D.

Nov. 10, 1988.

Donald Donati and Wanda Donati, Memphis, Tenn., for plaintiff.

Paul Rice and Harold Johnson, Jackson, Tenn., for defendants.

ORDER PARTIALLY GRANTING AND PARTIALLY DENYING DEFENDANTS' MOTION FOR DISMISSAL AND SUMMARY JUDGMENT AND GRANTING PARTIAL SUMMARY JUDGMENT FOR PLAINTIFF

TODD, District Judge.

Before the court are the cross-motions for summary judgment on the issue of liability of plaintiff Andy Barkley and defendants City of Jackson, Tennessee, Jackson Civil Service Commission, and E.B. Alderson, individually and as Chief of Police.[1] Fed.R.Civ.P. 56 governs the disposition of motions for summary judgment. In ruling on a motion for summary judgment, the court will consider all of the materials submitted by the plaintiff and the defendants. If no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment for that party shall be granted. Fed.R.Civ.P. 56(c). Summary judgment is appropriate when it is clear that a trial is unnecessary. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Doubts as to the existence of a genuine issue for trial are resolved against the movant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970).

I. STATEMENT OF FACTS

The facts of this case are almost entirely undisputed. Plaintiff Barkley was employed by the City of Jackson as a police officer from 1976 to January 1981, when he was terminated by the city. Berkley alleges that the manner of his termination violated his right of procedural due process and he has brought this action against the city, as well as Chief of Police Alderson and the Jackson Civil Service Commission, under 42 U.S.C. §§ 1983 and 1985.

Initially, an incident occurred in which Barkley pulled his weapon in the presence of juveniles and allegedly threatened to shoot some people. After an internal affairs investigation, no disciplinary action was commenced at that time. Then on December 4, 1980, Barkley fired five gunshots at a fleeing automobile theft suspect. Again an internal affairs investigation was undertaken. Near the end of his shift on December 5, 1980, Barkley submitted a written statement of his intention to take sick leave. In a letter dated December 8, 1980, Barkley was requested by Chief Alderson to attend a December 10 meeting to discuss the recent internal affairs investigation concerning Barkley's handling of firearms on and off duty and for a yearly performance review. Barkley remained on medical leave, however; a letter from Barkley's psychiatrist indicated that Barkley was experiencing an extreme job-related stress reaction.

Another meeting between Alderson and Barkley was scheduled for December 22, 1980. In the meantime, the internal affairs investigation of the December 4 incident had resulted in charges against Barkley for the violation of the department's deadly force policy. Alderson sent a letter to Barkley on December 19 informing Barkley that he would be taken off the department payroll once his medical and holiday benefits expired on December 22, 1980, and that he would not be reinstated until he had discussed with Alderson the internal affairs charges and the performance review. Alderson further stated that "[n]o discus-

---

**1.** The lawyers have informed the court that Carl Lee Johnsey, who also was named as a defendant, is deceased.

sion will take place until you have medical authorization stating that you are competent to discuss these matters." No medical authorization was forthcoming and Barkley never received official notification of the charges. Indeed, the internal affairs officer in charge of the Barkley investigation reported: "Due to the fact that Officer Barkley is on medical leave ..., I am unable to complete the forms and serve the administrative summons. Therefore, as of this date, Dec. 31, 1980, Officer Barkley has not been advised of these violations by the Internal Affairs Bureau."

The police department and Alderson made several attempts to contact Barkley, but once the internal charges were lodged, no meeting ever took place. On January 12, 1981, Chief Alderson advised Barkley by certified mail of his recommendation to the City Commission that Barkley be separated from employment with the Jackson police department for conduct unbecoming a police officer and for insubordination. Although neither Barkley nor his attorney at the time knew the final decision of the City Commission, an appeal immediately was taken to the Civil Service Commission of Jackson. The Civil Service Commission notified Barkley of his appeal hearing to be held on January 28 by a letter dated January 23, 1981, to his attorney. Barkley was unable to attend, and he requested a continuance by letter hand-delivered to the Commission on the day of the hearing. Although Barkley's letter was read into the minutes of the Civil Service Commission meeting, the Chairman of the Commission stated that "... due to the fact that Mr. Barkley has no representative here whatsoever and that we have nothing whatsoever that a continuance or postponement has even been requested, it is the unanimous decision of the Board that the City's action in the case of Mr. William A. Barkley be upheld." Barkley's request for a second hearing in front of the Civil Service Commission also was denied.

## II. DEFENDANTS' MOTIONS FOR DISMISSAL AND FOR SUMMARY JUDGMENT

■ The City of Jackson has moved to dismiss the § 1983 claim against it. That motion is denied. The essence of the city's argument is that the Mayor and the City Commission, who terminated Barkley upon Chief Alderson's recommendation, are not "policy-makers" within the meaning of *St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), because their decision was subject to review by the Civil Service Commission. The court finds untenable any argument that the personnel decisions of the Mayor and the Jackson City Commission do not represent official city policy. *St. Louis v. Praprotnik* did not alter the basic proposition that municipalities are liable for injuries inflicted by "lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. New York Dept. of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978).

■ Because the conduct involving Barkley's termination was undertaken as official city action, the § 1983 claims against Chief Alderson individually should be dismissed. *See Kentucky v. Graham*, 473 U.S. 159, 165–68, 105 S.Ct. 3099, 3104–07, 87 L.Ed.2d 114 (1985). *Cf. Jones v. Duncan*, 840 F.2d 359 (6th Cir.1988) (City councilmen acted as individuals instead of in their official capacity.) The remaining claims against Alderson are against him in his official capacity, and so he stands in the same posture as the city in this action. *See Brandon v. Holt*, 469 U.S. 464, 472, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985).

■ In addition, plaintiff Barkley has contended that the defendants acted in conspiracy to deprive him of his civil rights in violation of 42 U.S.C. § 1985. These claims also must be dismissed. A § 1985 claim must be dismissed when conclusory allegations of conspiracy are unsupported by material facts in the pleadings. *Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir.1984). A bare statement that the defendants conspired to infringe the plaintiff's rights with no fleshing out of the particulars, as in the Barkley complaint, cannot withstand a motion to dismiss. *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir.1987).

■ Further, even if there were supporting facts in the complaint, a claim of conspiracy between the City of Jackson, the Jackson Chief of Police in his official capacity, and the Jackson Civil Service Commission would not be recognizable legally. A city cannot conspire with its employees and its agents because the acts of the Chief of Police and the Civil Service Commission are the acts of the City. Under the principles of agency law, they are a single entity. *Doherty v. American Motors Corp.,* 728 F.2d 334, 339–40 (6th Cir.1984); *Tate v. Alexander,* 527 F.Supp. 796, 807 n. 12 (M.D.Tenn.1981), *modified sub nom Alexander v. Alexander,* 706 F.2d 751 (6th Cir. 1983).

In addition to the above motions for dismissal, the defendants have filed a joint motion for summary judgment on the procedural due process and qualified immunity issues.[2] For the reasons stated in the discussion of plaintiff's motion below, the defendants' position in the procedural due process issue is not well-taken. In addition, the court finds that the defendants' qualified immunity defense should be rejected.

■ Officials can claim qualified immunity for their official acts only insofar as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Manion v. Michigan Bd. of Medicine,* 765 F.2d 590, 597 (6th Cir.1985). Thus, if the law that the defendants are alleged to have violated can be said to be clearly established under an objective standard, the defendants forfeit their qualified immunity defense. *Davis v. Scherer,* 468 U.S. 183, 194, 104 S.Ct. 3012, 3019, 82 L.Ed. 2d 139 (1984); *Windsor v. The Tennessean,* 719 F.2d 155, 165 (6th Cir.1983), *cert. denied,* 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed. 2d 50 (1984).

■ Chief Alderson contends that the parameters of procedural due process regarding deprivation of public employment were not clearly established at the time that he made the Barkley decision. The

question, however, is not whether the method or type of hearing required was clearly established; in this case, Barkley was given no opportunity for a pre-termination hearing at all. Barkley's termination from the police force was undertaken by the defendants without ever hearing Barkley's side of the story, in spite of the fact that the Supreme Court in *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), clearly established that prior to the discharge of an employee who has a constitutionally protected property interest in his employment, procedural due process requires "some kind of hearing." *Id.* at 570 n. 7, 92 S.Ct. at 2705 n. 7. Alderson and the City carried out Barkley's termination without affording him any hearing whatsoever, in violation of the mandate in *Roth.* Under the circumstances, "it is not unfair to hold liable the official who knows or should know he is acting outside the law, and ... insisting on an awareness of clearly established constitutional limits will not unduly interfere with the exercise of official judgment." *Butz v. Economou,* 438 U.S. 478, 506–07, 98 S.Ct. 2894, 2910–11, 57 L.Ed.2d 895 (1978).

### III. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Barkley has moved for summary judgment on the issue of liability on his § 1983 claims. Barkley argues that the defendants in their handling of his dismissal from the police force violated his right of procedural due process as a matter of law. The court agrees and finds that Barkley's motion for partial summary judgment should be granted.

■ To establish a violation of procedural due process in job termination cases, the plaintiff must prove that (1) he had a property interest in his continued employment as determined under state law and (2) the constitutional minimum of due process before the plaintiff was deprived of his interest in public employment was not provided in his case. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct.

---

**2.** Only defendant Alderson has raised the qualified immunity defense.

1487, 1493, 84 L.Ed.2d 494 (1984). There is no question here, and the defendants do not dispute the fact, that Barkley had a property interest in his continued employment with the City.

Because a property interest attached to Barkley's employment, it was incumbent upon Alderson and the City to afford him "some kind of hearing" prior to his discharge. *Board of Regents v. Roth,* 408 U.S. 564, 569 n. 7, 92 S.Ct. 2701, 2705 n. 7, 33 L.Ed.2d 548 (1972). In general, something less than a full evidentiary hearing usually is sufficient, *Mathews v. Eldridge,* 424 U.S. 319, 343, 96 S.Ct. 893, 907, 47 L.Ed.2d 18 (1976); but, at the least, "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story [prior to termination.]" *Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495.

The defendants argue that Barkley had an opportunity to present his side of the story during the two internal affairs investigations conducted before his termination. These meetings with the internal affairs investigating officers, however, did not fulfill the minimum due process requirements with regard to Barkley's termination. Barkley was not faced with charges at the times of those meetings. Although Barkley had a chance to answer the questions of the investigating officer and to discuss the original complaints, Barkley did not have the opportunity to respond to the official departmental charges of conduct unbecoming an officer and insubordination, which were the stated bases for his dismissal.

The necessity of a hearing after the existence of formal charges but before termination is explained in *Cleveland Board of Education v. Loudermill:*

... [S]ome opportunity for the employee to present his side of the case is recurringly of obvious value in reaching an accurate decision. Dismissals for cause will often involve factual disputes. Even where the facts are clear, the appropriateness or necessity of the discharge may not be; in such cases, the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be before the termination takes effect. [The hearing] should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the the charges against the employees are true and support the proposed action. ... The opportunity to present reasons, either in person or in writing, why proposed action should be taken is a fundamental due process requirement.

470 U.S. at 543, 545–46, 105 S.Ct. at 1494, 1495–96 (citations omitted). The complete lack of notice or of any sort of pre-termination hearing once formal department charges had been brought not only violated rudimentary constitutional principles but also was in violation of the City's own departmental policy.[3] *See Abraham v. Pekarski,* 728 F.2d 167, 170 (3d Cir.), *cert. denied,* 467 U.S. 1242, 104 S.Ct. 3513, 82 L.Ed.2d 822 (1984). (In public employee's challenge of his dismissal, evidence that plaintiff was not accorded any hearing whatsoever amply supported claim of infringement of procedural due process).

The deprivation of due process continued in the post-termination appeal conducted by the Civil Service Commission. After receiving Barkley's request for a continuance, the commissioners proceeded to discuss the matter in Barkley's absence and upheld the City's action. Although the irritation of the commissioners is understandable (since they planned the assembly for the single purpose of considering the Barkley case only to be notified a few hours beforehand of Barkley's request for a continuance), their feelings toward Barkley could not alter his right to due process

---

**3.** General Order 6–80, signed into effect by Chief Alderson on October 23, 1980, sets out procedures for internal police force discipline. The order requires that written notice of the specific charges be issued to the accused officer and that the accused officer be provided with a full and impartial hearing. Because the conduct of the Barkley matter failed to provide the most basic constitutional protections, the court does not reach the issue of whether the established internal procedures created a legitimate expectation of a higher level of due process.

during all phases of decisionmaking. That is not to say that all requests for continuances must be granted. However, in this case, given the city's recognition of Barkley's inability to discuss the matter and his request for a continuance which was ignored, the court concludes that Barkley was denied due process.

Post-termination hearings are an important part of the process that is due regarding deprivation of employment interests, and the scope of the post-termination hearing is inextricably intertwined with the scope of pre-termination procedures.

> Where ... a court has approved an abbreviated pre-termination hearing due process requires that a discharged employee's post-termination hearing be substantially more "meaningful". At a minimum, this requires that the discharged employee be permitted to attend the hearing, to have the assistance of counsel, to call witnesses and produce evidence on his own behalf, and to know and have an opportunity to challenge the evidence against him. The severity of depriving a person of the means of livelihood requires that such person have at least one opportunity for such a full hearing, so that he may challenge the factual basis for the state's action and may provide reasons why that action should not be taken.

*Carter v. Western Reserve Psychiatric Habilitation*, 767 F.2d 270, 273 (6th Cir. 1985). Thus, the responsibility of the Civil Service Commission as the post-termination hearing body was to afford a discharged police department employee the opportunity for a hearing, the depth of which was to be gauged by the pre-termination due process that the employee was supposed to receive under established police procedures. Barkley was owed an even more

"meaningful" post-termination hearing due to the lack of pre-termination protections in his case.[4] Yet the Commission ignored Barkley's request for a continuance with the puzzling assertion that they had no evidence of Barkley's request when, in fact, the letter had been read into the minutes of the meeting. The action of the Civil Service Commission deprived Barkley of his procedural due process rights, which required the City and the Civil Service Commission to provide Barkley "at least one opportunity for ... a full hearing." *Id.*

The defendants argue that Barkley was given an "opportunity" to be heard numerous times, both before and after his dismissal, and Barkley's lack of attendance at those scheduled meetings was not the fault of the defendants. The defendants' interpretation is too literal, however. The "opportunity to be heard" does not mean "chance" in the sense of a lottery, but it signifies the requirement that a meaningful hearing be available if an employee should choose to invoke that right. *Grandison v. Smith*, 779 F.2d 637, 641 (11th Cir.1986). The defendants' position is in essence a waiver argument; however, a waiver of the employee's opportunity to be heard must follow " 'fair notice [of termination] and an effective opportunity to respond....' " *Id.* (quoting *Downing v. Williams*, 624 F.2d 612, 630 (5th Cir.1980)). Defendants' treatment of Barkley, who was not given an effective opportunity to respond to the charges against him either before or after his termination,[5] did not meet this standard. Therefore, defendants' waiver defense must fail.

## IV. CONCLUSION

The court finds that plaintiff Barkley was not afforded an opportunity to be

---

**4.** Post-deprivation hearings rarely are able to correct the complete absence of pre-termination due process. *Board of Regents v. Roth*, 408 U.S. at 570 n. 8, 92 S.Ct. at 2705 n. 8; *Duchesne v. Williams*, 849 F.2d 1004, 1006 (6th Cir.1988) (" '[T]he fact that Ohio provided appellants in this case with full evidentiary hearings [with an impartial judge] after termination does not suggest that no other process was due.' " (quoting *Loudermill v. Loudermill*, 721 F.2d 550, 560 (6th

Cir.1983))). *See also Cleveland Bd. of Educ.*, 470 U.S. at 542 n. 7, 105 S.Ct. at 1493 n. 7.

**5.** Before his termination, Barkley was told that the matters for which he later was fired would not be discussed with him until he was determined competent to discuss them. After his termination, Barkley's appeal was decided in his absence, despite his request for a continuance.

heard before or after he was deprived of his public employment, in contravention of his procedural due process rights. Plaintiff's motion for partial summary judgment on the issue of liability therefore is GRANTED on the § 1983 claims against the City of Jackson, Jackson Civil Service Commission and Chief Alderson in his official capacity only. The § 1983 claims against Alderson individually are DISMISSED. Also, plaintiff's claim of conspiracy under § 1985 is DISMISSED. The remainder of defendants' motion is DENIED.

A hearing on the type and amount of damages will be set later. The court takes this opportunity to point out to the parties that reinstatement at this point appears unlikely. Indeed, had the defendants not rushed to a decision and instead given Barkley the opportunity for adequate pre- and post-termination hearings, in the court's opinion Barkley would have gotten all he was due. Under the circumstances presented here, Barkley would not have been suitable to remain in his job with the police force. At the damages hearing the court will consider any other losses Barkley may have sustained.

IT IS SO ORDERED.