Karl S. DAVIDSON

v.

Governor Phillip BREDESEN, in His
Individual Capacity, et al.

Court of Appeals of Tennessee,
at Nashville.

Sept. 15, 2009 Session.

Nov. 23, 2009.

Order Denying on Rehearing
Dec. 16, 2009.

Application for Permission to Appeal
Denied by Supreme Court
June 18, 2010.

Joseph Howell Johnston and John Herbison, Nashville, Tennessee, for the appellant, Karl S. Davidson.

Robert E. Cooper, Jr., Attorney General and Reporter, Steven A. Hart, Special Counsel, and Janet M. Kleinfelter, Senior Counsel, for the appellees, Governor Phillip Bredesen, Commissioner Gina Lodge,

(former) TennCare Director J.D. Hickey, Commissioner David Goetz, Commissioner Paula Flowers and (former) Deputy Governor David Cooley.

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S. and HOLLY M. KIRBY, J., joined.

## OPINION

Plaintiff filed a cause of action against several State officials, in their individual capacities, asserting multiple claims after being disenrolled from TennCare following amendments to TennCare in 2005. The trial court granted Defendants' motion to dismiss Plaintiff's claims for failure to state a claim. We affirm in part, reverse in part, and remand for further proceedings.

This lawsuit arises from the disenrollment of Plaintiff Karl S. Davidson (Mr. Davidson) from TennCare following amendments to TennCare in 2005. On October 17, 2007, Mr. Davidson filed a complaint in the Chancery Court for Davidson County naming as Defendants Governor Phillip Bredesen, in his individual capacity; Gina Lodge, Commissioner of Department of Human Services, in her individual capacity; J.D. Hichey, Director of Bureau of TennCare, in his individual capacity; David Geotz, Commissioner of Department of Finance and Administration, in his individual capacity; Paula Flowers, Commissioner of Department of Commerce and Insurance, in her individual capacity, and David Cooley, Deputy to the Governor, in his individual capacity (collectively, "Defendants").[1] In his complaint Mr. Davidson asserted that, at all times material to his action, he was and re-

<hr />

1. Mr. Davidson originally commenced his action in June 2006. The action was voluntarily nonsuited without prejudice on October 17, 2006, and recommended within the one-year period provided by the savings statute.

mained eligible for TennCare benefits, and that he was a "person" within the scope of the Racketeer Influence and Corrupt Organizations Act ("RICO") as codified at 18 U.S.C. § 1961, *et seq.* and under 42 U.S.C. § 1983. He asserted that he suffers from several chronic medical conditions, is uninsurable, and that in 2002 he applied and was declared eligible for TennCare benefits. He further asserted that, from June 20 through September 14, 2005, he and other TennCare enrollees participated in a continuous sit-in demonstration to protest approved amendments to TennCare that would result in the disenrollment of thousands of TennCare enrollees. Mr. Davidson additionally asserted that the Bureau of TennCare ("the Bureau") notified him on August 16, 2005, that he was being disenrolled from TennCare; that on August 30 he filed an appeal with the Bureau which should have extended his coverage for six months; and that his appeal was denied and his benefits terminated on December 12, before the expiration of the six-month extension period. He asserted that he filed a timely motion with the Bureau to alter or amend its December decision to deny his appeal, and that the motion was pending when he commenced his action in chancery court.

Mr. Davidson alleged that, during the June–September sit-in, he and other participants were "regularly harassed and intimidated by Defendant Dep. Gov. Cooley and others under the direction and control of Defendant Gov. Bredesen." He alleged that demonstrators were denied access to food and water on several occasions, which jeopardized his health because of his medical conditions, including diabetes. Mr. Davidson further alleged that food and clothing items were seized from him on at least six occasions. In his complaint, Mr. Davidson asserted that "[t]hese willful and malicious acts of harassment and intimidation were done by Defendant Dep. Gov. Cooley and others under the direction of Defendant Gov. Bredesen in order to suppress [his] civil rights to free speech, freedom of assembly, and freedom to petition the government for redress of grievances guaranteed under the U.S. Constitution and the Tennessee Constitution." He further asserted that the decision to disenroll him from TennCare constituted willful and malicious retaliation against him for exercising his constitutional rights.

In his complaint, Mr. Davidson also asserted that, beginning November 2004, Defendants had begun a series of meetings to "covertly conspire, plan for, and to willfully and maliciously carry out the systematic and illegal dismantling of TennCare which called for disenrolling more than 300,000 TennCare enrollees." He alleged that the "covert plan to systematically dismantle TennCare was based on the false pretense that … the State of Tennessee would become bankrupt and that there were no other alternatives available to stave off this alleged imminent financial disaster[.]" Mr. Davidson alleged Defendants engaged in a series of "top-level covert meetings" to formulate the plan in order to "cover up the State's history of mismanagement, graft, and corruption and to cast blame on non-profit TennCare advocate groups and previous federal court consent decrees which the State had previously entered into as a result of federal litigation." He further alleged that Defendants "conspired by a pattern of deliberate misrepresentation and deceit to exacerbate the financial problems of TennCare by willfully and maliciously preventing any alternative proposals" and that Defendants made public statements falsely accusing TennCare advocate groups of causing the demise of TennCare. Mr. Davidson also alleged that some Defendants profited from the TennCare "reforms" affecting interstate commerce.

Mr. Davidson asserted multiple causes of action in his complaint. He asserted Defendants had violated: 1) his First Amendment right to free speech; 2) his Fourteenth Amendment due process rights; 3) RICO; 4) the Tennessee Human Rights Act; and 5) Article I, § 19 of the Tennessee Constitution. He further asserted Defendants had committed constructive fraud and had breached their fiduciary duty to the beneficiaries of TennCare. Mr. Davidson sought declaratory and injunctive relief, and prayed for an injunction directing Defendants to reinstate his TennCare benefits to their original scope. He also sought damages arising from pain and suffering which he alleged resulted from the withdrawal of medications and pharmaceuticals that he could not afford but which were needed to treat his chronic medical conditions; damages resulting from mental distress; unliquidated compensatory damages; and treble damages for willful misconduct pursuant to RICO. Mr. Davidson also prayed for prejudgment interest; reasonable attorneys fees and costs; and discretionary costs and other general relief. He demanded a trial by jury. Mr. Davidson attached nine exhibits to his complaint to support his allegations.

In January 2008, Defendants filed a motion to dismiss Mr. Davidson's action under Tennessee Rules of Civil Procedure 12.02(1) and (6). In their motion, Defendants asserted Mr. Davidson's claims based on allegations of deliberate misrepresentation and fraud were barred by collateral estoppel and lack of standing. They further asserted that the court lacked subject matter jurisdiction to adjudicate any claims attempting to reach the State treasury, and that Mr. Davidson's claims under 42 U.S.C. § 1983 were barred by the one-year statute of limitations. Defendants asserted that they had qualified immunity from an award of damages where they had not violated any clearly established law, and that injunctive relief could not be issued against State officials in their individual capacity. Defendants further asserted Mr. Davidson had failed to plead his claim of fraud with sufficient particularity; that he had failed to state a claim for constructive fraud; and that there is no private cause of action to recover damages for violation of the Tennessee Constitution by a State officer. Additionally, Defendants asserted Mr. Davidson had failed to state a claim under the Tennessee Human Rights Act where he did not allege harassment based on race, color, religion, ancestry or national origin; and that he had failed to state a claim under RICO where he did not sufficiently plead and set-forth the pre-requisites of a RICO civil claim and where he failed to demonstrate a causal connection between the alleged acts and an injury to his business or property. Defendants also asserted that Mr. Davidson failed to state a claim for violation of his free speech rights or for any breach of a fiduciary duty. Finally, Defendants asserted Mr. Davidson had failed to properly exhaust his administrative remedies under the Administrative Procedures Act, and that he had failed to state a claim for deprivation of due process rights.

In March 2008, Mr. Davidson filed a motion to disqualify the Attorney General from representing Defendants on the grounds that it was foreseeable that the Attorney General would be called as a witness at the trial of the matter. He also filed a response to Defendants' motion to dismiss. The trial court heard Mr. Davidson's motion to disqualify the Attorney General on April 4, 2008, and held the motion in abeyance pending judgment on Defendants' motion to dismiss. Following a hearing on May 2, 2008, the trial court granted Defendants' motion to dismiss.

By order entered May 15, 2008, the trial court dismissed the matter for failure to state a claim under Tennessee Rule of Civil Procedure 12.02(6). The trial court incorporated into its order the reasoning and legal authorities set forth in Defendants' memorandum and reply memorandum in support of their motion to dismiss. The trial court also dismissed Mr. Davidson's motion to disqualify the Attorney General as counsel for Defendants as moot, and taxed costs against Mr. Davidson.

On May 7, 2008, Mr. Davidson filed a motion objecting to the trial court's order of dismissal, and moving the trial court to make its own findings of fact and conclusions of law under Tennessee Rule of Civil Procedure 52. On May 15, the trial court entered an order dismissing Mr. Davidson's objection. In its order, the trial court stated that Defendants' briefs had "amply demonstrated the deficiencies in the complaint" and that there was no reason for the court to draft its own opinion with respect to its legal conclusions. Defendants responded on May 16, asserting that, under the plain language of the Rule 52, the trial court was not required to make findings of fact and conclusions of law where it had dismissed the matter for failure to state a claim under Rule 12.02(6). Mr. Davidson filed a notice of appeal to this Court on June 10, 2008.

### Issues Presented

In his brief to this Court, Mr. Davidson raises eleven issues for our review. Succinctly stated, the issue presented on appeal is whether the trial court erred by dismissing Mr. Davidson's claims for failure to state a claim under Tennessee Rules of Civil Procedure 12.02(6).

### Standard of Review

A Rule 12.02(6) motion to dismiss challenges only the legal sufficiency of the complaint itself, and not the strength of the plaintiff's proof. *Trau–Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn.2002) (citations omitted). The court must construe the complaint liberally, presuming all facts as alleged by plaintiff to be true and affording plaintiff the benefit of all reasonable inferences. *Id.* The trial court should not dismiss the complaint for failure to state a claim unless it appears that the plaintiff can prove no facts in support of the claim that would warrant relief. *Id.* "Great specificity in the pleadings is ordinarily not required to survive a motion to dismiss; it is enough that the complaint set forth a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* (citations omitted). We review the trial court's award of a Rule 12.02(6) motion to dismiss *de novo*, with no presumption of correctness. *Id.* at 697.

### Discussion

In his complaint, Mr. Davidson asserted seven causes of action against six Defendants in their individual capacities. He prayed for a declaratory judgment; a preliminary and permanent injunction reinstating his TennCare benefits; unliquidated compensatory damages; treble damages; prejudgment interest; reasonable attorney's fees and costs; and discretionary costs. In their memoranda to the trial court, which the trial court incorporated into its order of dismissal, Defendants asserted, in essence, that Mr. Davidson had failed to demonstrate that he was entitled to relief under any of the causes of actions asserted in his complaint. Thus the issue presented by this appeal, as we perceive it, is whether, assuming the facts as asserted in Mr. Davidson's complaint to be true, Mr. Davidson has stated a claim which would

entitle him to an award of damages or injunctive relief under any of the causes of actions asserted.

### I. Injunctive Relief

■ We turn first to whether Mr. Davidson has stated a claim which would entitle him to an injunction requiring Defendants to reinstate him to the TennCare rolls. Defendants argue that, in their individual capacities, they are unable to provide the injunctive relief sought and that Mr. Davidson has failed to assert that he would be eligible for TennCare benefits under the program as amended in 2005. We agree.

In his complaint, Mr. Davidson stated that he "applied for and was declared eligible for TennCare coverage on June 25, 2002[;]" that "[b]ut for Tenncare, [he] remains uninsurable[;]" and that "[u]pon learning that Defendants were seeking federal court permission to disenroll more than 300,000 TennCare enrollees, [he], along with a dozen other enrollees, started a 24–hour–per–day sit-in demonstration at the Governor's office beginning on June 20, 2005, and ending on September 14, 2005, a period of 77 days and nights, to protest against the possible termination of his own TennCare benefits as well as the disenrollment of more than 300,000 other TennCare enrollees." Mr. Davidson alleged that the pending reforms to Tenn-Care were sanctioned by the U.S. District Court and a majority of the State legislature as a result of Defendants' "deliberate misrepresentation and deceit." He alleged that "[a]s a result of the racketeering activities of Defendants and their conspiracy to deprive Plaintiff of his civil rights under color of law, more than 200,000 elderly, poor and uninsurable Tennesseans, including Plaintiff, were disenrolled by Defendants DHS and TennCare and have been left without health insurance coverage."

Mr. Davidson also asserted that "[o]n August 16, 2005, during the course of his sit-in demonstration, [he] was disenrolled from TennCare by Notice from the Defendant Bureau of TennCare." He asserted that he had exhausted his administrative remedies by filing the appropriate appeals with the Bureau of TennCare, and that his appeal was denied on December 12, 2005. Mr. Davidson asserted that he filed a Tennessee Rule of Civil Procedure 59 motion to alter or amend, that a response had been filed by the office of the general counsel for TennCare, but that no final order had been entered as of the date of his complaint. He asserted, "Plaintiff avers that the decision to disenroll him from TennCare coverage was motivated in part by the animus created by Plaintiff's exercise of his constitutional rights ... and the conduct of the Defendants accordingly constitutes retaliation against Plaintiff for his exercise of those rights[.]"

Mr. Davidson attached the Bureau of TennCare's August 2005 notice notifying him that his TennCare benefits would end on September 5, 2005, to his complaint. This notice stated, "TennCare rules have changed." It advised Mr. Davidson that, under the new rules, adults age 19 and over could keep TennCare only if they had Medicaid; that the Bureau's records indicated that Mr. Davidson did not have TennCare Medicaid; and that, according to the information provided by Mr. Davidson to DHS, Mr. Davidson did not qualify for Medicaid. The notice advised Mr. Davidson of how to appeal the decision, and further advised him that he could reapply for Medicaid at any time.

As an initial matter, we observe that, although Mr. Davidson referred to "Defendants DHS and TennCare" in his complaint, Mr. Davidson sued Defendants in their individual capacities. Mr. Davidson named neither TennCare nor DHS in his

complaint; he did not name any Defendant in their official capacity; and the State was not a defendant to this action. Although he alleged that the changes to TennCare were the result of deceit, corruption and conspiracy, Mr. Davidson did not pray for an injunction preventing the TennCare reforms. Indeed, as Mr. Davidson indicated in his complaint, and as Defendants asserted in their memorandum in support of their motion to dismiss, issues regarding the lawfulness of the changes to TennCare were fully litigated in federal court.[2] Mr. Davidson was a party to the class-action litigation in the federal court. Thus, issues regarding the legality of the TennCare reforms are *res judicata.*

Assuming the facts in Mr. Davidson's complaint to be true, Mr. Davidson is not entitled to the injunctive relief prayed for in his complaint. Although we are not insensitive to Mr. Davidson's medical conditions, he simply is ineligible for TennCare benefits in light of the 2005 amendments to TennCare, and Defendants are without power or authority to provide the relief sought. Accordingly, we affirm dismissal of Mr. Davidson's claims for injunctive relief under all the grounds asserted in his complaint.

## II. Damages

We next turn to whether the trial court erred in dismissing Mr. Davidson's claim for damages under any of the causes of action asserted in his complaint. Mr. Davidson claimed compensatory damages for pain and suffering as a result of withdrawal from medications that he could not afford to purchase after being disenrolled from TennCare, and for mental distress arising from the increased rise of illness and death which he asserted was caused by the acts and omissions of Defendants. He asserted that the changes to TennCare which caused his damages were the result of Defendants' actions and omissions. Mr. Davidson asserted causes of action for constructive fraud, breach of fiduciary duty, and violations of RICO. Mr. Davidson also claimed treble damages under RICO for Defendants' willful misconduct. Mr. Davidson additionally asserted causes of action under 42 U.S.C. § 1983, and for malicious harassment in violation of Tennessee Code Annotated § 4–21–701.

### A. Fraud, Breach of Fiduciary Duty, and RICO

We affirm the trial court's dismissal of Mr. Davidson's causes of action asserting constructive fraud, breach of fiduciary duty, and violations of RICO. These claims are barred by the doctrines of collateral estoppel and *res judicata.* *Res judicata* is a claim preclusion doctrine. *Massengill v. Scott,* 738 S.W.2d 629, 631 (Tenn.1987). Under the doctrine, a final judgment on the merits rendered by a court of competent jurisdiction concludes the rights of the parties and their privies. *Richardson v. Tenn. Bd. of Dentistry,* 913 S.W.2d 446, 459 (Tenn.1995). The doctrine bars a subsequent action between the parties that involves the same claim or cause of action. *Id.* It prohibits multiple lawsuits with respect to issues which were or could have been litigated in the prior suit. *Massengill,* 738 S.W.2d at 631. Accordingly, *res judicata* applies not only to issues that were raised and adjudicated in the prior lawsuit, but to "all claims and issues which were relevant and which could reasonably have been litigated in a prior action." *Am. Nat'l Bank and Trust Co. of Chattanooga v. Clark,* 586 S.W.2d

**2.** *See Rosen v. Goetz,* 410 F.3d 919 (6th Cir. 2005); *Grier v. Goetz,* 402 F.Supp.2d 876 (M.D.Tenn.2005).

825, 826 (Tenn.1979). It is a "rule of rest" that promotes finality in litigation. *Moulton v. Ford Motor Co.*, 533 S.W.2d 295, 296 (Tenn.1976)(quoting 2 Freeman on Judgments, § 626, 1320 (5th ed.1925)). In order for the doctrine of *res judicata* to apply, the prior judgment must have been final and concluded the rights of the parties on the merits. *Richardson*, 913 S.W.2d at 459. Although the lawsuits must involve the same parties or their privies, and the same cause of action or identical issues, a party's failure to raise an issue or theory does not preserve it as a ground for a subsequent lawsuit. *Barnett v. Milan Seating Sys.*, 215 S.W.3d 828, 835 (Tenn.2007).

■■■■ The doctrine of collateral estoppel, or issue preclusion, bars the same parties to an earlier suit, and their privies, from relitigating issues that were litigated and determined in a prior suit. *Barnett v. Milan Seating Sys.*, 215 S.W.3d 828, 835 (Tenn.2007) (citation omitted). It does not apply to issues that were unnecessary for the decision in the previous suit, or if the party against whom the issue preclusion is asserted "did not have a full and fair opportunity to litigate the issue in the prior suit." *Id.* (citation omitted). A party defending on the basis of collateral estoppel must demonstrate that "(1) the judgment in the prior case was final and concluded the rights of the party against whom the defense is asserted, and (2) both cases involved the same parties, the same cause of action, or identical issues." *Id.* (citation omitted).

■■■ *Grier v. Goetz*, 402 F.Supp.2d 876 (M.D.Tenn.2005), was a class action suit originally filed in 1979 under 42 U.S.C. § 1983 on behalf of current and future Tennessee Medicaid recipients. *Grier*, 402 F.Supp.2d at 881. The action resulted in a series of consent decrees entered into by the State of Tennessee. *Id.* at 881–882.

In June 2005, the State filed a motion to modify or clarify a consent decree entered in 2003. *Id.* at 882. The motion contained thirty-four requests for modification or clarification. *Id.* The issue of TennCare's prescription drug coverage was litigated in Grier. Additionally, the federal court in that case engaged in an in-depth discussion of the history of the TennCare program, found that modification of the earlier 2003 consent decree was warranted, and further found that some, but not all, of the modifications were suitably tailored under the circumstances and met the requirements of federal law. *Id.* at 889.

In *Grier*, the district court noted that TennCare historically provided coverage which was considerably broader in scope than that provided by traditional Medicaid, and that "[i]n addition to expanding eligibility" beyond that of Medicaid, "TennCare provided comprehensive medical benefits with relatively few limits." *Id.* at 886 n. 3 (observing that "TennCare extended Medicaid coverage to 22.3% of its population, providing health care for more of its population than any other State in the country."). The *Grier* court further stated that in early October 2004 the State learned that it would be losing nearly $140 million in federal Medicaid funding and that, in closing out the TennCare budget for the 2004 financial year, the State learned that the growth in pharmacy and medical utilization rates had been an "unexpectedly high." *Id.* at 887.

*Rosen v. Goetz*, 410 F.3d 919, 922 (6th Cir.2005), was a class action lawsuit that arose from a March 2001 consent decree entered into by the State and the Plaintiff class, which represented all the beneficiaries of TennCare. *Rosen*, 410 F.3d at 922. That consent decree enjoined the State from "terminating, reducing or suspending" TennCare coverage without affording TennCare recipients with notice and an

opportunity to be heard. *Id.* In January 2005, Tennessee Governor Phil Bredesen announced that a severe budget shortfall, together with the State's constitutionally mandated balanced budget requirement, would require the elimination of a number of TennCare eligibility categories, making 323,000 beneficiaries ineligible for Tenn-Care. *Id.* On its own initiative, the district court enjoined the State from beginning its disenrollment process as barred by the consent decree. *Id.* The State appealed, and a group representing the class of individuals subject to disenrollment was permitted to intervene in the matter. *Id.* Following lengthy and complex litigation of substantive and procedural issues arising from the proposed disenrollment process, the Sixth Circuit Court of Appeals concluded that the State had satisfied the applicable standards in modifying the TennCare program. The court reversed the district court's order enjoining the State from beginning the disenrollment process. In so doing, the appellate court stated:

> In reaching these conclusions, it is not lost on us that the implementation of the State's disenrollment process will cause hardship for numerous Tennesseans. When a State to its credit achieves the status of becoming one of the most generous providers of Medicaid services in the nation, it may occasionally happen that the zero-sum fiscal realities of administering a state budget will prohibit the State from sustaining that level of support. If that should happen, it is not for the federal courts to compel the State to maintain non-mandatory Medicaid programs that it no longer can support. So long as the State's disenrollment process satisfies the requirements of the Medicaid regulations and statute, any relevant consent decrees and the Constitution, those policy choices must

be left to the elected representatives of the residents of the State.

In addressing whether the State's disenrollment procedures satisfy these requirements, we have concluded that on their face and with respect to all of the SPMI population they indeed satisfy them. *See United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (holding that in a facial challenge plaintiffs must show that "no set of circumstances exists" under which the statute can be implemented constitutionally). That conclusion, however, does not prohibit an individual TennCare recipient, who is not treated in accordance with these requirements or for whom it is uniquely inappropriate to apply these requirements, from bringing a specific as-applied challenge to the disenrollment process. *See Overton v. Bazzetta,* 539 U.S. 126, 137, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003). We resolve only whether these procedures may be applied to TennCare recipients in general or to the SPMI population as a whole. Throughout this appeal, plaintiffs have urged us to ignore the MOU and the 100,000 or so TennCare recipients that may be spared the hardship of initial disenrollment if the State is allowed expeditiously to proceed with its proposed changes to the TennCare program. In their view, the MOU contains numerous speculative conditions and is otherwise unenforceable in its current state. In expediting this appeal and in expediting the decision below, the federal courts have strived to eliminate one of those conditions. And whether the MOU happens to be an enforceable agreement need not detain us at this point. A State that chooses to be one of the most generous in the country in providing non-mandatory Medicaid services strikes us as an improbable candidate for backing out of such a commitment in bad

faith. And elected officials who choose to play fast and loose with such an agreement, we suspect, would face more risks than any federal lawsuit can bring. *Id.* at 932–33.

In his complaint, Mr. Davidson alleged that Defendants "implemented a covert plan to systematically dismantle Tenncare" and that their actions "in dismantling TennCare were accomplished by deliberately neglecting TennCare's basic management problems while pursing radical changes through the Section 115 Waiver process." Much of Mr. Davidson's complaint is devoted to alleging that expanded costs and undue financial burdens were utilized as a pretense for dismantling TennCare, and that the disenrollment measures and procedures arose from a conspiracy based on fraud and deceit.

We agree with Defendants that the *Rosen* court fully adjudicated the TennCare disenrollment process with respect to both substantive and procedural issues. Mr. Davidson does not dispute that he was a member of the plaintiff class in *Rosen.* He has not asserted a set of facts to suggest that he was "not treated in accordance with these requirements [as stated in *Rosen* ] or [that he is one] for whom it is uniquely inappropriate to apply these requirements[.]" The compensatory damages claimed by Mr. Davidson for pain and suffering arising from the inability to afford prescription medication and for mental distress arising from the increased risk to his health simply are not damages attributable to Defendants in their individual capacities. Rather, they arise from changes to TennCare. The legality of these changes have been fully litigated in federal court. Mr. Davidson simply has no claim to damages arising from the loss of his TennCare benefits where the modifications to TennCare have been approved by the federal courts

through litigation between TennCare beneficiaries and the State. Insofar as Mr. Davidson's complaint asserts claims predicated on questions regarding the substantive and procedural legality of the amendments to TennCare, his cause of action is barred by the doctrines of collateral estoppel and *res judicata.* Insofar as Mr. Davidson's complaint asserts claims based on allegations that the amendments were based on pretext and conspiracy, those issues are barred by the doctrine of *res judicata.*

### B. Retaliation under 42 U.S.C. § 1983 in Violation of First Amendment Rights

■■■■■ In order to establish a prima facie case under 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) the defendant was acting under the color of state law, and (2) the defendant's conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or federal law. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). In order to prove a claim for retaliation under the section, a plaintiff must establish:

> (1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights.

*Bloch v. Ribar,* 156 F.3d 673, 678 (6th Cir.1998) (citations omitted). In his complaint, Mr. Davidson alleged that "the decision to disenroll him from TennCare coverage was motivated in part by the animus created by [his] exercise of his constitutional rights ... and the conduct of the Defendants accordingly constitutes retalia-

tion ... for his exercise of those rights." Mr. Davidson sought declaratory and injunctive relief and damages pursuant to 42 U.S.C. § 1983.

As an initial matter, we note that "[d]ismissals of complaints under the civil rights statutes are scrutinized with special care." *Moore v. City of Harriman*, 272 F.3d 769, 771 (6th Cir.2001)(citing *Jones v. Duncan*, 840 F.2d 359, 361 (6th Cir.1988) (quoting *Dunn v. Tennessee*, 697 F.2d 121 (6th Cir.1982))). A plaintiff who seeks damages under section 1983 must clearly state that his suit is one against a state official in his individual capacity. *Id.* at 772 (citing See *Wells v. Brown*, 891 F.2d 591, 592 (6th Cir.1989)).

As noted above, Mr. Davidson does not assert that he is eligible for Tenn-Care benefits under TennCare as amended in 2005. We agree with Defendants that Mr. Davidson has not alleged facts that would demonstrate a causal connection between the exercise of first amendment rights and his disenrollment from Tenn-Care. Although Mr. Davidson's complaint "avers" that the decision to disenroll him from TennCare was motivated "in part by the animus" created by his participation in the sit-in demonstration, this averment is a conclusion, not a statement of fact. Mr. Davidson has stated no fact to indicate that he would not have been disenrolled from TennCare had he not participated in the sit-in demonstration. On the contrary, it is undisputed that Mr. Davidson's participation in the sit-in demonstrations arose from the pending amendments to Tenn-Care and anticipated resultant loss of benefits to Mr. Davidson. Thus, we affirm dismissal of this claim insofar as Mr. Davidson seeks damages caused from the loss of TennCare benefits.

However, taking the facts alleged in Mr. Davidson's complaint with respect to the seizure and deprivation of food, water, and clothing by State officers during the course of the sit-in to be true, Mr. Davidson has stated a cause of action for relief with respect to damages proven to be proximately caused by Defendants' actions during the course of the sit-in demonstration beginning June 20, 2005. In his brief to this Court, Mr. Davidson defines these damages and those arising from "fear and mental anguish, as well as the physical pain and discomfort, caused by the harassment, intimidation, and deprivation of food which aggravated Mr. Davidson's diabetes." As Defendants concede in their brief to this Court, claims under section 1983 for injuries arising on or after June 20, 2005, are not barred by the statute of limitations where Mr. Davidson's original complaint was filed on June 20, 2006, voluntarily dismissed, and re-filed within the one-year period provided by the savings statute. In light of our standard of review of a trial court's grant of a motion to dismiss a complaint under the civil rights statutes, we remand for further proceedings on this claim.

### C. 42 U.S.C. § 1983 Claim for Violation of Due Process Rights

We turn next to Mr. Davidson's claim under 42 U.S.C. § 1983 that he was denied due process as guaranteed by the Fourteenth Amendment. In his brief to this Court, Mr. Davidson asserts he has been denied due process "on his claims concerning his eligibility for TennCare and concerning matters other than his eligibility for TennCare." As noted above, Mr. Davidson has stated no facts to support an assertion that he is eligible for TennCare benefits under TennCare as amended. Thus, Mr. Davidson's argument that he has been deprived due process concerning his eligibility for TennCare is baseless. In light of our discussion above, and our re-

mand of this matter to the trial court for further proceedings with respect to Mr. Davidson's section 1983 claim for violation of his First Amendment rights, we believe Mr. Davidson has received all the process due him with respect to his claims regarding "matters other than eligibility for TennCare."

### D. Malicious Harassment

 We finally turn to Mr. Davidson's cause of action for malicious harassment under Tennessee Code Annotated § 4–21–701. The claim of malicious harassment was outlined by the Tennessee Supreme Court in *Washington v. Robertson County*, 29 S.W.3d 466 (Tenn.2000). The *Washington* court stated:

> [A] claim of malicious harassment requires not only that a person acted maliciously, i.e., ill-will, hatred or spite, but also that a person unlawfully intimidated another from the free exercise or enjoyment of a constitutional right by injuring or threatening to injure or coercing another person or by damaging, destroying or defacing any real or personal property of another person.

*Washington*, 29 S.W.3d at 473. To establish a claim for malicious harassment under Tennessee Code Annotated § 4–21–701, the plaintiff must demonstrate that the perpetrator intentionally intimidated the plaintiff from freely exercising a constitutional right. *Levy v. Franks*, 159 S.W.3d 66, 80 (Tenn.Ct.App.2004)(*perm. app. denied* Tenn. Dec. 6, 2004). As Defendants assert, the plaintiff must also demonstrate that the perpetrator was motivated by the victim's race, color, religion, ancestry or national origin. *Id.* at 81.

In his complaint, Mr. Davidson asserted that, during the 2005 sit-in demonstration at the State Capitol Building in protest against the anticipated termination of his TennCare benefits and the benefits of more than 300,000 other enrollees, he was "willfully and maliciously harassed and intimidated by various state officials and certain State Highway Patrol officers." He asserted that he was "denied food and water on several occasions, which placed [his] health in jeopardy because of his diabetes and other medical conditions." Mr. Davidson further asserted that "[f]ood items and clothing were also seized from [him] on at least six (6) different occasions[.]" In his complaint and in his brief to this Court, Mr. Davidson does not assert that the alleged malicious harassment by State officers was motivated by his race, color, religion, ancestry or national origin. He contends, however, that this Court incorrectly imposed these elements on the statutory scheme. Mr. Davidson asserts that, although the General Assembly apparently has acquiesced in the supreme court's construction of Tennessee Code Annotated § 4–21–701 in *Washington,* this Court exceeded its jurisdiction and authority in *Levy* when it added the requisite element of action based on race, color, religion, ancestry or national origin.

Both the Tennessee Supreme Court and the General Assembly have had opportunity to reverse or supercede this Court's holding that a claim for malicious harassment must by based on race, color, ancestry, religion or national origin. They have declined to do so. *See Oates v. Chattanooga Pub. Co.,* 205 S.W.3d 418 (Tenn.Ct.App. 2006)(perm. app. denied Sept. 25, 2006). This argument is without merit. We affirm dismissal of Mr. Davidson's cause of action for malicious harassment where Mr. Davidson does not assert a claim based on race, color, ancestry, religion, or national origin.

### Holding

In light of the foregoing, we reverse the trial court's dismissal of Mr. Davidson's

cause of action under 42 U.S.C. § 1983 for violation of his First Amendment rights. We remand for further proceedings on this issue consistent with this Opinion. We affirm the trial court's dismissal of the remainder of Mr. Davidson's claims. Costs of this appeal are taxed one-half to the Appellees, Governor Phillip Bredesen, in his individual capacity; Gina Lodge, Commissioner of Department of Human Services, in her individual capacity; J.D. Hichey, Director of Bureau of TennCare, in his individual capacity; David Geotz, Commissioner of Department of Finance and Administration, in his individual capacity; Paula Flowers, Commissioner of Department of Commerce and Insurance, in her individual capacity, and David Cooley, Deputy to the Governor, in his individual capacity, and one-half to the Appellant, Karl S. Davidson, and his surety, for which execution may issue if necessary.

## ORDER

The Appellant, Karl S. Davidson, has filed a petition for rehearing in this matter. After due consideration, the petition is denied. Costs are assessed to Karl S. Davidson and his surety. **IT IS SO ORDERED.**